BERSCHBACK v GROSSE POINTE PUBLIC SCHOOL DISTRICT

TERNAN v MICHIGAN HIGH SCHOOL ATHLETIC ASSOCIATION, INC

Docket Nos. 87459, 88037. Submitted July 2, 1986, at Detroit. Decided August 18, 1986. Leave to appeal applied for.

In September, 1985, Donald F. Berschback transferred from a parochial high school, Warren DeLaSalle, to a public high school, Grosse Pointe South, to begin the eleventh grade. Grosse Pointe South is the public high school for the area in which Berschback resides with his parents. Desiring to participate in interscholastic sports in the 1985 fall semester, Berschback requested that the Grosse Pointe Public School District request a waiver from the Michigan High School Athletic Association of the transfer-eligibility rule which would require him to sit out the fall semester. The school district refused to make he request. Don R. Berschback, as next friend of Donald F. Berschback, brought an action for declaratory relief in Wayne Circuit Court against the Grosse Pointe Public School District and the Michigan High School Athletic Association, Inc. Defendant association moved for summary disposition, which was granted by the trial court, Thomas J. Foley, J. Plaintiff appealed.

In September, 1985, Amy Ternan transferred from a parochial high school, Lutheran High North, to a public high school, Rochester Adams, to begin the tenth grade. Rochester Adams is a three-year high school and is the public high school for the area in which Ternan resides with her parents. Since Ternan desired to participate in interscholastic sports in the 1985 fall semester, she requested that the superintendent of the Rochester Community School District request a waiver from the Michigan High School Athletic Association of the transfer-eligibility rule. The superintendent made the request for a waiver, which was denied by the executive committee of the associa-

REFERENCES

Am Jur 2d, Constitutional Law §§ 746 et seq.

Am Jur 2d, Schools § 244.

Validity of regulation of athletic eligibility of students transferring from one school to another. 15 ALR4th 885.

tion. Lawrence R. Ternan, as next friend of Amy Ternan, brought an action for injunctive relief in Oakland Circuit Court against the Michigan High School Athletic Association and the Rochester Community School District. The association moved for summary disposition. The trial court, Robert L. Templin, J., granted the motion. Plaintiff appealed.

The two appeals were consolidated for consideration by the Court of Appeals.

The Court of Appeals *held:*

1. While the Michigan High School Athletic Association is technically a private nonprofit corporation, its actions, for the purpose of Fourteenth Amendment claims, are state actions, since it is composed to a large extent of public school members.

2. The application of the transfer-eligibility rule of the association did not deny these students equal protection of the laws. There exists a rational basis for the rule, neither a fundamental right or a suspect class is involved and the rule, with its exceptions, is not overbroad. The exceptions in the rule are neither arbitrary nor irrational.

3. Participation in high school interscholastic athletics is not a property right which is protected under the due process clause. Accordingly, there is no right to a hearing on a request for a waiver of the transfer-eligibility rules.

4. While the application of the association's transfer-eligibility rule does not deprive transferring students of any constitutional right, the association should administer the rule with sensitivity to the hardships it sometimes places on students. Changes in the transfer-eligibility rule must come through the political rather than the judicial process.

Affirmed.

1. CONSTITUTIONAL LAW — EQUAL PROTECTION — STATE ACTION — HIGH SCHOOL ATHLETICS.

The adoption and application of athletic eligibility rules by the Michigan High School Athletic Association constitutes a state action for purposes of application of the constitutional right to equal protection of the laws (US Const, Am XIV).

2. CONSTITUTIONAL LAW — EQUAL PROTECTION — REGULATORY CLASSIFICATIONS — LEGITIMATE STATE INTERESTS.

A legislative or administrative classification which does not involve a suspect classification or fundamental right will be sustained against an equal protection challenge if a legitimate regulatory purpose has been identified and the challenged classification will promote that purpose, that is, if the classifica-

tion is rationally related to a legitimate governmental interest (US Const, Am XIV).

3. CONSTITUTIONAL LAW — EQUAL PROTECTION — HIGH SCHOOL ATH-
    LETICS — ATHLETIC ELIGIBILITY RULES.

The transfer-eligibility rule adopted by the Michigan High School Athletic Association is rationally related to the legitimate state interest of discouraging the recruiting or pirating of high school athletes, is not overbroad, and is not arbitrary; there-fore, the rule cannot be said to deny equal protection of the laws.

4. CONSTITUTIONAL LAW — DUE PROCESS — PUBLIC EDUCATION —
    HIGH SCHOOL ATHLETICS — PROTECTED INTERESTS.

The right to a public education does not create a right to participation in interscholastic sports such that participation in interscholastic sports is a protected interest which may be abridged only through due process of law; since there is no property or liberty interest in participation in interscholastic sports, there exists no due process right to a hearing or oppor-tunity for review before the Michigan High School Athletic Association can apply its transfer-eligibility rule.

*Berschback, Kerwin, LoCicero, Chilingirian & Brennan* (by *Don R. Berschback*), for Don R. Berschback.

*Patterson & Patterson, Whitfield, Manikoff, Ter-nan & White* (by *Lawrence R. Ternan*), for Law-rence R. Ternan.

*Edmund J. Sikorski, Jr.,* for the Michigan High School Athletic Association, Inc.

Before: GRIBBS, P.J., and D. F. WALSH and BEAS-LEY, JJ.

BEASLEY, J. Each of the plaintiffs in these consol-idated cases, Amy Ternan, a minor, by her next friend Lawrence R. Ternan, and Donald F. Bersch-back, a minor, by his next friend Don R. Bersch-back, filed a complaint alleging that the "transfer eligibility" rule adopted by defendant, Michigan

High School Athletic Association, Inc., (MHSAA) denied plaintiffs equal protection of the laws, in violation of US Const, Am XIV. Plaintiffs also alleged that the specific application of the MHSAA rule by defendants, MHSAA, Rochester Community School District and Grosse Pointe Public School District, denied plaintiffs their right to due process of law, in violation of US Const, Am XIV. Each of the plaintiffs sought declaratory relief and a temporary restraining order to enjoin enforcement of the rule in order to allow them to participate in interscholastic sports during the fall semester of 1985.

Defendant MHSAA brought a motion for summary disposition under MCR 2.116(C)(10) in each action, claiming that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. The trial judge in each action granted defendant MHSAA's motion for summary disposition and denied each plaintiff's request for a temporary restraining order. Each plaintiff filed a motion in this Court for immediate consideration and for a stay of enforcement of defendant MHSAA's transfer-eligibility rule. This Court granted each plaintiff's motion, enjoining the defendants from enforcing the rule. Defendant MHSAA then filed motions in the Michigan Supreme Court, requesting that this Court's injunctive order in each case be set aside and requesting leave to appeal prior to decision by this Court. The Supreme Court denied defendant MHSAA's motions, but directed this Court to expedite the appeals.

The factual situations in both cases are remarkably similar and are not in serious dispute. In September, 1985, Amy Ternan transferred from a parochial school, Lutheran High North, to a public high school, Rochester Adams High School, to begin the tenth grade. Rochester Adams High

School is a three-year high school which includes the tenth, eleventh and twelfth grades and is the public high school for the area where Amy Ternan resides with her parents.

During the summer prior to Amy Ternan's transfer, she became aware of defendant MHSAA's transfer-eligibility rule which, if applied to her, would bar her from participating in interscholastic sports for the first semester she attended Rochester Adams High School. Since Amy Ternan wished to participate on the Rochester Adams girls basketball team during the fall semester of her tenth grade, she requested that the superintendent of the Rochester Community School District request a waiver of the transfer-eligibility rule in her case. Pursuant to defendant MHSAA's rules, the superintendent requested the waiver for Ternan. On August 6, 1985, defendant MHSAA's executive committee considered the superintendent's request, but denied the waiver. At this point, Ternan filed a complaint in the circuit court and the judicial proceedings described above followed.

Also in September, 1985, Donald F. Berschback transferred from a parochial high school, Warren DeLaSalle, to a public high school, Grosse Pointe South High School, to begin eleventh grade. Grosse Pointe South High School is the four-year public high school for the area where Donald F. Berschback resides with his parents.

Prior to his transfer, Donald F. Berschback became aware that defendant MHSAA's transfer-eligibility rule, if applied to him, would bar him from participating in interscholastic sports for the first semester he attended Grosse Pointe South High School. Since Donald F. Berschback wished to participate on the Grosse Point South High School varsity football team during the fall semester of his eleventh grade, he requested, pursuant to de-

fendant MHSAA's rules, that the deputy superintendent of Grosse Pointe Public School system request a waiver of the transfer-eligibility rule in his case. The deputy superintendent declined to request a waiver from the MHSAA for Berschback. Berschback then filed a complaint in the circuit court, and the judicial proceedings described above followed.

Initially, we note that all the parties agree that the issues raised in these cases are technically moot, as they relate to Amy Ternan and Donald F. Berschback. This Court's order staying enforcement of defendant MHSAA's transfer-eligibility rule effectively allowed both plaintiffs the relief they requested, since each was allowed to participate in interscholastic sports during the fall semester of 1985. However, we also note that the time period between a denial of a waiver request and the start of the athletic season is normally too short to allow a case to progress fully through the appellate system. Since the situation presented by these cases appears to arise frequently at the beginning of each school year and involves issues of significant public importance, and since the trial courts fully addressed the issues now raised on appeal, we will address the issues raised by the parties in this appeal.[1]

On appeal, both plaintiffs first argue that defendant MHSAA's transfer-eligibility rule denies them equal protection of the law, in violation of US Const, Am XIV. The MHSAA transfer-eligibility rule, with its thirteen express exceptions, provides:

> A student who transfers from one high school or junior high/middle school to another high school is

---

[1] See *Grano v Ortisi,* 86 Mich App 482; 272 NW2d 693 (1978); *Milford v Peoples Community Hospital Authority,* 380 Mich 49; 155 NW2d 835 (1968).

ineligible to participate in an interscholastic athletic contest for 1 full semester in the school to which the student transfers, except that the following students may be declared eligible:

(1) A student who moves into a new district or school service area with the persons with whom he or she was living during his or her last school enrollment.

(2) A student who moves into a district or school service area and resides with his or her parents in that district or area.

(3) A student who is a ward of the court or state and is placed in a district or school service area by court order. Guardianship does not fulfill this requirement.

(4) A foreign exchange student who is placed in a district or school service area by a bona fide exchange program.

(5) A student who marries and establishes a new residence in a new district or school service area.

(6) A student who transfers to another school because his or her school ceases to operate.

(7) A student in attendance at a school designated by the governing body of that school as the result of reorganization, consolidation or annexation, or at the public school in the district where he or she resides.

(8) A student from divorced or legally separated parents who moves into a new school district with one of the aforementioned parents and the principal of each of the two schools involved signs the Educational Transfer Form which certifies the reason for the move as it relates to the divorced/separated parents. The transfer is permitted one time and must be approved by the Executive Director before the student competes in interscholastic athletic competition. (1981)

(9) A student ordered transferred within a school system for other than athletic purposes, by a board of education or the governing body of a private or parochial school system.

(10) A student who enters in the ninth grade of

a four year high school and has not been previously enrolled in the ninth grade.

(11) A student who completes the last grade available in the school system previously attended. (1971)

(12) A student eighteen (18) years or older who moves from one school district to another without being accompanied by a parent or parents and resides within that new school district and both principals sign the Educational Transfer Form certifying the transfer is in the best educational interest of the student. The transfer is permitted one time and must be approved by the Executive Director before the student competes in interscholastic athletic competition. (1983).

(13) A student who becomes a bona fide boarding student of a boarding school, as defined in the school code, and the principal of each of the two schools involved signs the Educational Transfer Form which certifies the reason for the move as it relates to his/her enrollment at the boarding school. The transfer is permitted one time and must be approved by the Executive Director before the student competes in interscholastic athletic competition (1982).

The MHSAA is an athletic association as described in MCL 380.1289(2); MSA 15.41289(2):

An association established for the purpose of organizing and conducting athletic events, contests, or tournaments among schools shall be the official association of the state. The association shall be responsible for the adoption and enforcement of regulations relative to eligibility of pupils in schools for participation in interscholastic athletic events, contests, or tournaments.

Individual school boards join the MHSAA by adopting the rules and regulations of the MHSAA, as authorized in MCL 380.1521; MSA 15.41521:

A board may join an organization created pursuant to section 1289 which has as its object the promotion of sport and the adoption of rules for the conduct of athletic contests between students. The association is the official association of the state for the purpose of organizing and conducting athletic events, contests, and tournaments among schools. The association shall be responsible for the adoption and enforcement of regulations relative to eligibility of athletes in schools for participation in interscholastic athletic events, contests, and tournaments.

Virtually every public and private secondary school in Michigan is a member of the MHSAA.

Technically, the MHSAA is a private, nonprofit corporation. The MHSAA is governed by a representative council made up of fourteen members elected by the member schools and four members appointed by the elected members. The representative council elects the MHSAA's executive committee, which consists of seven members. The executive committee reviews requests made by member schools for waiver of eligibility rules, as provided in the MHSAA rules:

Except for the eligibility rule in regard to age, the Executive Committee shall have the authority to set aside the effect of any eligibility rule upon an individual student when in its opinion the rule fails to accomplish the purpose for which it is intended, or when the rule works an undue hardship upon the student.

Request for the consideration of such exceptions shall be acted upon by the Executive Committee three (3) times during each school year. The first meeting for the consideration of such exceptions shall be held during the month of August, the second meeting shall be held during the month of November and third meeting shall be held during the month of March. Other cases may be heard at

the discretion of the Executive Committee if the incident causing the hardship occurred between the regular meeting scheduled or the hardship ruling.

Application for the consideration of such exceptions must be made in writing by the superintendent or principal or their designated representative of the high school and should contain all the facts pertinent to the case, including sufficient data to make it possible to reach a decision without further investigation. Such application shall be filed in the office of the Executive Director not later than five (5) days before the meeting of the Executive Committee. A hearing before the Executive Committee is not necessary and will be allowed only if requested in the application.

Appeals from decisions of the Executive Committee to the Representative Council shall proceed as in other appeals to the Representative Council.

In addressing plaintiffs' equal protection claim, we first note that all of the parties assume that the MHSAA eligibility rules involve state action for purposes of the Fourteenth Amendment. We believe that this assumption is correct, since the MHSAA is comprised to a large extent of public school members and is statutorily characterized as the "official association of the state."[2] Therefore, we conclude that the adoption and application of eligibility rules by the MHSAA constitutes state action for purposes of the Fourteenth Amendment.

In challenging the transfer-eligibility rule on equal protection grounds, plaintiffs argue that the rule is unreasonably overbroad. In making this argument, plaintiffs correctly note that the primary purpose of the transfer-eligibility rule is to prevent interscholastic athletic recruiting at the secondary school level. As the MHSAA executive

---

[2] See *In re United States ex rel Missouri State High School Activities Ass'n,* 682 F2d 147 (CA 8, 1982).

board stated in addressing Ternan's waiver request, the rule is designed to prevent "school shopping" for athletic purposes and the undesirable results that would flow from such athletic recruiting and transfer practices.

Plaintiffs, after noting this primary purpose of the rule, then call attention to the fact that the specific rule adopted by the MHSAA will often apply to students, such as those herein, who transfer for reasons other than athletics. Plaintiffs then argue that the rule, which classifies students based only upon whether they have transferred from one school to another and which broadly bars students who have transferred from participating in interscholastic sports in order to prevent athletic recruiting, constitutes a denial of equal protection.

In making their argument, plaintiffs rely on two cases involving transfer-eligibility rules of athletic associations in other states. In *Sullivan v University Interscholastic League*,[3] the court found that the purpose of the transfer-eligibility rule to discourage recruitment of high school athletes was a legitimate state objective. However, the *Sullivan* court went on to find that the transfer-eligibility rule involved in that case was unreasonably overbroad and overinclusive because it burdened many student athletes who were not recruited and were forced to transfer when their families moved for employment or other reasons. Thus, the *Sullivan* court concluded that the rule constituted a denial of equal protection.

In *Sturrup v Mahan*,[4] the court also found that the rule's purpose of discouraging recruiting was a legitimate state purpose. However, the *Sturrup* court went on to find that the transfer-eligibility rule involved in that case was unreasonably over-

[3] 616 SW2d 170 (Tex, 1981).
[4] 261 Ind 463; 305 NE2d 877 (1974).

inclusive, since it automatically barred all trans-
ferring students, other than those who moved to a
new school district with their families or those
who moved due to unavoidable circumstances,
from participating in athletics for a period of one
calendar year. The court held that the rule consti-
tuted a denial of due process.

After reviewing these two cases from other
states, we do not believe that they control the
result in this case. First, we note that defendant
MHSAA's transfer-eligibility rule is definitely nar-
rower than the rules involved in *Sullivan* and
*Sturrup.* The MHSAA rule in question expressly
provides for thirteen exceptions for transferring
students. These exceptions, which apply to stu-
dents who have moved to a new district with their
parents and students who are entering the ninth
grade for the first time, factually distinguish the
MHSAA rule from those involved in either *Sullivan*
or *Sturrup.* Furthermore, the transfer-eligibility
rules in *Sullivan* and *Sturrup* barred transferring
students from athletic participation for a period of
one calendar year, which is double the period of
the MHSAA rule which bars transferring students
for a period of only one semester.

More importantly, the decisions in *Sullivan* and
*Sturrup* appear to be anomalies in this area of the
law. Specifically, the focus on the "overbroad" and
"overinclusive" nature of the rules by the *Sullivan*
and *Sturrup* courts to find a denial of equal protec-
tion departs significantly from traditional equal
protection analysis. Courts in other jurisdictions
that have applied a traditional equal protection
analysis in addressing challenges to athletic associ-
ation transfer-eligibility rules have upheld these
rules.[5]

---

[5] See *Missouri State High School Activities Ass'n, supra;* Anno:

Under traditional equal protection analysis where classifications do not involve a suspect class or a fundamental right, once a legitimate regulatory purpose has been identified, the only question remaining is whether the rule makers reasonably believed that use of the challenged classification would promote that purpose.[6] Therefore, a rule will be upheld against an equal protection challenge if it contains a classification rationally related to a legitimate governmental interest.[7]

This extremely deferential rational basis test applies in the within cases since the MHSAA's classification of students based on whether they have transferred to a new school or not does not involve a suspect classification such as race, or a quasi-suspect classification such as gender. Furthermore, the MHSAA's classification of students does not infringe upon any fundamental rights. The United States Supreme Court has held that public education itself is not a fundamental right for purposes of equal protection analysis.[8] Therefore, we conclude that participation in high school interscholastic athletics does not constitute exercise of a fundamental right. Furthermore, since the rule expressly excepts students who have moved to a new district with their parents or students who have had to move for other various reasons, we do not believe the rule significantly infringes upon the fundamental right of interstate travel.

Applying the traditional rational basis test to

*Validity of regulation of athletic eligibility of students voluntarily transferring from one school to another,* 15 ALR4th 885.

[6] *Minnesota v Clover Leaf Creamery Co,* 449 US 456, 464-465; 101 S Ct 715; 66 L Ed 2d 659 (1981).

[7] *Rouge Parkway Associates v City of Wayne,* 423 Mich 411, 422; 377 NW2d 748 (1985).

[8] *San Antonio Independent School Dist v Rodriguez,* 411 US 1; 93 S Ct 1278; 36 L Ed 2d 16 (1973).

the MHSAA transfer-eligibility rule, we believe that the rule is rationally related to the legitimate regulatory purpose of discouraging the recruiting of high school athletes and, thus, does not constitute a denial of equal protection. The MHSAA has rationally concluded that barring certain high school students who transfer from one school to another after initial entry into the ninth grade will substantially discourage recruiting, pirating and jumping of high school athletes from one school to another. We do not conclude that the MHSAA's determination concerning its transfer-eligibility rule is irrational, arbitrary or capricious. In addition, we believe the fact that the rule will apply to students, such as these plaintiffs, who have not transferred for athletic reasons, does not render the rule irrational or arbitrary. Even if we were to assume these are somewhat overbroad and overinclusive classifications, they are not necessarily irrational and, in fact, may be necessary for the realization of a legitimate state purpose.

We believe this is true even in the case of Amy Ternan, who entered a three year public high school at the initial tenth grade level. The fact that the MHSAA rule classifies and treats Amy Ternan differently than a student who enters a four year public high school at the initial ninth grade level does not render the rule irrational or arbitrary. The MHSAA, in formulating its transfer-eligibility rule, may have reasonably concluded that high school students entering the tenth grade are much more susceptible to recruitment by other schools than are students entering the ninth grade. Students entering the tenth grade have had one more year to mature physically and to demonstrate their athletic abilities. Therefore, we conclude that the failure to except students initially entering the tenth grade in three year high

schools from the application of the transfer-eligibility rule is not irrational or arbitrary and does not constitute a denial of equal protection.

On appeal, both plaintiffs also argue that the application of the transfer-eligibility rule in these cases constituted a denial of procedural due process, in violation of US Const, Am XIV. Specifically, plaintiffs argue that the procedures used by defendant schools and defendant MHSAA's executive committee in addressing and denying their applications for waiver of the rule violated each students right to due process. Plaintiffs claim that there existed a due process right to a hearing on the issue of whether the waiver should be granted and that this due process right has been violated by the application of the transfer-eligibility rule in these cases.

Plaintiffs rely on the decision of the United States Supreme Court in *Goss v Lopez*[9] to support their claim that participation in interscholastic athletics is a property or liberty interest protected by the due process clause of the Fourteenth Amendment. The *Goss* Court found that appellees, who were students in the Ohio public schools, had legitimate claims of entitlement to a public education based on the fact that Ohio statutes concerning compulsory attendance, etc., extended the right of a public education to the appellees. The Court went on to hold that these legitimate claims of entitlement to a public education created by state law gave rise to a property interest protected under the due process clause of the Fourteenth Amendment. Therefore, the *Goss* Court concluded that the state, through the action of individual school principals, could not withdraw the appellees' right to a public education by suspending

[9] 419 US 564; 95 S Ct 729; 42 L Ed 2d 725 (1975).

them from school for ten days based on their alleged misconduct absent fundamentally fair procedures (due process) to determine whether the misconduct had occurred.[10]

The foundation of the *Goss* decision rests on the Court's determination that the student appellees had a legitimate claim of entitlement to a public education, which was created by state education laws. In finding that the appellees had this legitimate claim of entitlement protected by the Fourteenth Amendment, the Court expressly discussed the source of this protected interest:

> The Fourteenth Amendment forbids the State to deprive any person of life, liberty, or property without due process of law. Protected interests in property are normally "not created by the Constitution. Rather, they are created and their dimensions are defined" by an independent source such as state statutes or rules entitling the citizen to certain benefits. *Board of Regents v Roth,* 408 US 564, 577 [92 S Ct 2701; 33 L Ed 2d 548] (1972). [419 US 572-573.]

In the within case, plaintiffs argue that Michigan law creates a protected, legitimate claim of entitlement to a public education and that this protected interest in a public education includes a legitimate claim of entitlement to participation in interscholastic athletics. Although we believe Michigan law, through its compulsory education statute,[11] creates a protected interest in public education, we do not believe this protected interest in public education extends to a student's participation in interscholastic sports.

The term public education, used in *Goss* to refer to an interest in classroom attendance, is a broad

[10] 419 US 574.
[11] MCL 380.1561; MSA 15.41561.

term not limited to mere classroom attendance. Public education includes many separate components, such as participation in school athletics, clubs, social groups, etc. We do not read *Goss* to establish a constitutionally protected property interest in each of these educational components based merely upon compulsory classroom attendance and education statutes.[12] The compulsory education statute may create a protected, legitimate claim of entitlement to basic classroom attendance, but, alone, it does not create a legitimate claim of entitlement to participation in interscholastic athletics. Therefore, we believe that plaintiffs' assertion of a protected property interest in interscholastic athletics must be based on a legitimate claim of entitlement created by Michigan law beyond the compulsory education statute.

Plaintiffs, in attempting to find a further basis for their assertion that Michigan law creates a legitimate claim of entitlement to participation in interscholastic athletics, point to the Michigan Supreme Court decision in *Richards v Birmingham School Dist.*[13] The Michigan Supreme Court in *Richards* found that a school district which fostered and promoted interscholastic athletics in accordance with state regulations as part of its educational program was engaged in a governmental function for purposes of the governmental immunity doctrine. Plaintiffs argue that this finding in *Richards* creates a legitimate claim of entitlement to participation in interscholastic athletics. We disagree.

The *Richards* Court merely found that, when a school district chooses to allow, foster and promote interscholastic athletics, such interscholastic athletic programs are a component of a school's edu-

---

[12] See *Albach v Odle,* 531 F2d 983, 985 (CA 10, 1976).

[13] 348 Mich 490; 83 NW2d 643 (1957).

cational program and, thus, constitute a government function for purposes of the governmental immunity analysis. The *Richards* Court in no way found that school districts were required to allow students to participate in interscholastic athletics or that individual students had a legitimate claim of entitlement to participation in interscholastic athletics. Therefore, we find that the holding in *Richards* does not provide a basis for plaintiffs' assertion that they have a constitutionally protected interest in interscholastic athletics.

Our conclusion on plaintiffs' argument based on *Richards* is further supported by the Michigan statutes regarding interscholastic athletics. Extracurricular interscholastic athletic programs are not statutorily mandated courses of instruction. MCL 380.1502; MSA 15.41502 only requires a school district to provide a course in physical education, not interscholastic athletic programs. In addition, the language of MCL 380.1521; MSA 15.41521 makes it clear that the participation of a school district in an interscholastic athletic association is merely permissive and not required.

Based on the fact that Michigan statutory and case law merely allows a school district to participate in interscholastic athletics and does not mandate such participation, we conclude that Michigan law does not provide plaintiffs with a basis for a legitimate claim of entitlement to participation in interscholastic athletics. Thus, we conclude that plaintiffs have not shown that there is a property or liberty interest involved in the participation in interscholastic athletics such that participation in interscholastic athletics is protected by the Fourteenth Amendment of the United States Constitution. Therefore, we find that plaintiffs' claim that there was a denial of the constitutional right to due process of law when defendants applied the

transfer-eligibility rule in these cases without conducting a hearing or without providing an opportunity for effective review is without merit.

Although we reject plaintiffs' claims that defendant MHSAA's application of the transfer-eligibility rule denies plaintiffs their constitutional rights, we are constrained to underline the fact that this is a narrow decision based on constitutional principles and does not indicate our support for the sometimes heavy-handed application of the rule. As previously indicated, the rule often applies to students who have transferred for legitimate educational reasons beyond athletics and who have not been recruited for athletic reasons. Due to this extremely broad net that the rule throws over all transferring students, we believe defendants should be especially sensitive to the facts of individual cases in applying the rule.

Specifically, we believe defendants should apply the rule with sensitivity to the hardship it sometimes places on students, such as these plaintiffs, who have transferred for legitimate educational reasons without the farsightedness or ability to transfer a semester prior to the athletic season they wish to participate in. However, as our analysis above indicates, we do not believe that plaintiffs' opposition to, and our concerns about, the defendant MHSAA's transfer-eligibility rule rises to the level of a constitutional right. Therefore, any attempt by plaintiffs to change the transfer-eligibility rule, and application of that rule, must be through the political, rather than the judicial, process. This Court is not the proper forum for making or reviewing decisions concerning the eligibility of transferring students in interscholastic athletics.

Affirmed.