956 F.2d 269
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Angelita MERCADO, Plaintiff-Appellant, Cross-Appellee,
v.
"KINGSLEY AREA SCHOOLS/TRAVERSE CITY PUBLIC SCHOOLS ADULT
EDUCATION CONSORTIUM," an association comprised of Traverse
City Area Public Schools, Kingsley Area Public Schools,
Suttons Bay Area Public Schools, Leland Public Schools, Elk
Rapids Public Schools; Linda Barnhart, individually and
officially in her capacity as administering agent; and
Jerry L. Inman, individually and officially in his capacity
as fiscal agent, Defendants-Appellees Cross-Appellants.
 Nos. 91-1251, 91-1295.
 United States Court of Appeals, Sixth Circuit.
 Feb. 24, 1992.
 
 Before KENNEDY and RALPH B. GUY, Jr., Circuit Judges, and LIVELY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff, an Hispanic-American adult education student, filed a 42 U.S.C. § 1983 suit against a consortium of northern Michigan school districts, claiming that the administration of its adult education program violated equal protection and due process. The plaintiff sought injunctive, declaratory, and monetary relief for defendants' allegedly improper diversion of state funds from the adult education program to the districts' predominantly white, middle-class, K-12 programs. Plaintiff also stated a pendent cause of action under Michigan's School Aid Act of 1979, Mich.Comp.Laws Ann. § 388.1601, et seq., the statute which establishes the mechanism for the funding of adult education.
 
 
 2
 Finding that plaintiff lacked a protected property interest in the adult education program because defendants were under no duty to provide such a program, the district court dismissed plaintiff's due process claim. Applying the "rational basis" test, the court also dismissed her equal protection claim; since plaintiff had failed to present evidence of discriminatory intent, the court did not apply the "strict scrutiny" test. Finally, the court declined jurisdiction over plaintiff's pendent state claim and dismissed it without prejudice.
 
 
 3
 We affirm the district court's analysis and disposition of all three claims; we write only for additional clarification.
 
 I.
 
 4
 In her complaint, Angelita Mercado alleges that in 1986 she enrolled, as a 17-year-old single parent, in the defendants' adult education program in order to complete her high school equivalency requirements.[1] She claims her "expectations were delayed, frustrated or denied" due to the manner in which the defendants operated the program. According to Mercado, she received no books for four semesters, even though she had been charged a book deposit each semester; she and her classmates had to provide their own pencils and paper; they were not permitted to use the school library; homework was not assigned due to the limited number of available books; the students had no access to adequate bathroom and parking facilities; and no substitute teachers were provided, so classes were cancelled unless the regular instructors hired substitutes with their own funds. In addition, Mercado alleged that she had been unable to graduate when there was insufficient funding for the final classes she needed.
 
 
 5
 Mercado attributes these conditions to defendants' allegedly improper diversion of funds from the adult education program to the regular public school programs. Defendants contend that they may properly use some of this money for their traditional, non-adult programs. According to defendants, the state law which establishes the adult education funding system offers this very inducement to Michigan school districts, which otherwise would have no incentive to provide adult education (there being no law requiring them to do so).[2]
 
 
 6
 Mercado submitted evidence indicating that minorities comprise only 2.2 percent of the region's general population and approximately three percent of its regular school population. Several adult education teachers deposed by Mercado offered discrepant figures on minority enrollment in the adult education program. One estimated that figure to be 28 percent, another put it at 25 to 30 percent, and a third called it "about equal."
 
 II.
 
 7
 In her equal protection claim, plaintiff argues that defendants' conduct with respect to the adult education program should be subjected to the strict scrutiny test, requiring them to demonstrate a compelling need for operating the program in this way. This heightened level of scrutiny is mandated, she claims, by defendants' allegedly intentional discrimination against her, a member of a suspect class.[3] She contends, in the alternative, that defendants' conduct cannot pass the rational basis test, if that is the applicable standard.
 
 
 8
 Mercado first asserts that the defendants' facially neutral practice of diverting funds exerted a disparate impact on minorities, given that minorities constitute a greater percentage of the adult education students than they do of the mainstream, non-adult students. Defendants contend that plaintiff's statistical evidence fails to describe a case of disparate impact, since most of the adult education students do not belong to any protected minority and since defendants' conduct affects the program's minority and non-minority students equally.
 
 
 9
 The trial court declined to decide the disparate impact issue, reasoning that such an impact would not be sufficient, on its own, to trigger the strict scrutiny test. Washington v. Davis, 426 U.S. 229, 242 (1976). The court then found that plaintiff had failed to establish the requisite discriminatory intent, and, applying the lowest level of scrutiny, found that Mercado had failed to demonstrate that defendants' actions were not rationally related to a legitimate governmental purpose.
 
 
 10
 On appeal, Mercado argues that the trial court erroneously disregarded the proffer of her statistics as evidence from which an intent to discriminate may be inferred. The judge dismissed the relevance of plaintiff's statistics when citing the general rule that evidence of disparate impact, alone, does not trigger strict scrutiny. While we affirm the trial court's resolution of plaintiff's equal protection claim, we recognize that a demonstration of disparate impact may go a long way toward demonstrating discriminatory intent. "Sometimes a clear pattern, unexplainable on grounds other than race, emerges from the effect of the state action even when the governing legislation appears neutral on its face." Village of Arlington Heights v. Metropolitan Hous. Dev. Corp., 429 U.S. 252, 266 (1977) (citations omitted). Such cases are, however, "rare." Id. Although it is difficult, logically, to compare plaintiff's statistics to those offered in more traditional disparate impact cases (alleging discrimination in jury selection or employment, for example), we do not think that plaintiff's evidence is sufficiently "stark" to excuse her from making a separate proof of discriminatory intent. Id.
 
 
 11
 Nor do we believe that plaintiff makes such separate proof by pointing to defendants' "admission" that they intentionally use some of the funds, generated by their involvement in the adult education program, for other purposes. Plaintiff has made no showing that defendants engaged in such concededly intentional conduct " 'because of' ... its adverse effects upon an identifiable group." Personnel Admin'r of Mass. v. Feeney, 442 U.S. 256, 279 (1979). Standing alone, the foreseeability of an action's adverse impact does not establish discriminatory intent. Soberal-Perez v. Heckler, 717 F.2d 36, 42 (2d Cir.1983), cert. denied, 466 U.S. 929 (1984).
 
 
 12
 Plaintiff contends that defendants' conduct violates equal protection even without the application of heightened scrutiny. The defendants can have no rational basis, she claims, for operating the adult education program in a manner which allegedly violates certain standards of quality by which defendants promised to abide.[4] Such an allegation, even if proven true in plaintiff's state-court action, fails to satisfy her " 'heavy burden' of demonstrating that the challenged [conduct] is both arbitrary and irrational." Kadrmas v. Dickinson Pub. Schs., 487 U.S. 450, 463 (1988) (citation omitted). Using some of the funds for other purposes is the primary incentive for operating an adult education program, according to defendants; without such a financial inducement, few districts would choose to offer such instruction. On this record, defendants' conduct in accepting the statutory inducement cannot be deemed an irrational method of accomplishing the legitimate objective of bolstering general fund monies.
 
 III.
 
 13
 We also adopt the district court's reasoning with respect to Mercado's due process claim. The court concluded that because Michigan school districts are not required to provide adult education programs, plaintiffs interest in receiving such instruction does not rise to the level of a protected property interest for due process purposes.
 
 
 14
 In Goss v. Lopez, 419 U.S. 565, 574 (1975), the Supreme Court found that a state law, mandating free public education to all residents between ages five and 21 and requiring residents of that age to attend school, gave those students a property interest in public education which could not be taken away without due process. The trial court in this case distinguished Goss from Berschback v. Grosse Pointe Public School District, 397 N.W.2d 234, leave to appeal denied, 398 N.W.2d 1 (Mich.1986), in which students were found to have no legitimate claim of entitlement to engage in interscholastic athletics, since Michigan law did not require school districts to offer such athletics or to join interscholastic athletic associations. We are persuaded that Mercado's claim is more closely aligned with that of the Berschback plaintiffs than the Goss plaintiffs, and accordingly reject her due process argument.
 
 
 15
 Defendants have cross-appealed the trial court's ruling that Mercado has standing, under the Michigan School Aid Act, to bring a private cause of action challenging defendants' administration of the adult education program. The trial court declined to exercise jurisdiction over this state claim. We need not review the trial court's ruling on the standing issue, as the Michigan courts, if faced with plaintiff's complaint, may freely decide whether a private cause of action exists under the statute.
 
 
 16
 AFFIRMED.
 
 
 
 [1]
 Mercado had the option of remaining in the high school's regular classroom program or in its "pregnant teen program," in which she was enrolled for a time
 
 
 [2]
 As the entity which administers the consortium's adult education program, defendant Kingsley Area Schools receives state funds, some of which it may retain in its general fund as compensation and some of which it then passes on to the other defendants--the "cooperative" districts which provide the actual instruction. The parties disagree about the allocation mandated by the statute. Mercado maintains that all the money received from the state had to be spent on the adult education program; defendants insist that the statute allows the administering district to use some of the funds for other programs. In support of this position, defendants submitted the deposition of the Supervisor of Adult Education for the Michigan Department of Education, who stated that defendants' program complied with state law and had achieved a good rating. Whether defendants did indeed violate the Act is an issue to be resolved in plaintiff's state-court action, if she chooses to file one
 
 
 [3]
 Hispanics as an ethnic group qualify as a "suspect class" for equal protection analysis. Soberal-Perez v. Heckler, 717 F.2d 36, 41 (2d Cir.1983), cert. denied, 466 U.S. 929 (1984); Keyes v. School Dist. No. 1, 413 U.S. 189, 197 (1973)
 
 
 [4]
 Section 108 of the Michigan School Aid Act of 1979 requires a district operating an adult education program to incorporate into its program plan the state-approved "standards of quality," ensuring sufficient funding for, among other things, "adequate supplies and equipment" and "[a]ll course work required in the diploma completion program." (App. at 245)