REID v KENOWA HILLS PUBLIC SCHOOLS

Docket No. 239473. Submitted September 4, 2003, at Lansing. Decided March 2, 2004, at 9:05 A.M.

Stephen and Justin Reid, minors, through their next friends, Stephen and Debbie Reid, and others brought an action in the Washtenaw Circuit Court against Kenowa Hills Public Schools, the Michigan High School Athletic Association (MHSAA), and others, alleging that the defendants violated the statutory and constitutional rights of the plaintiffs by refusing to allow the plaintiffs to participate in the defendants' extracurricular interscholastic athletic programs. The next friends homeschool the plaintiffs as an exercise of their right to practice their religious beliefs. The defendants denied the plaintiffs' request to participate in the extracurricular interscholastic athletic programs on the basis of MHSAA regulations that, in part, require all participants in such programs to be enrolled in a public school for at least twenty hours a week. The court, Melinda Morris, J., granted summary disposition in favor of the defendants, finding no statutory or constitutional violations. The plaintiffs appealed.

The Court of Appeals *held*:

The statutes at issue do not require the defendants to allow nonenrolled students to take part in the interscholastic athletic programs. There is no religious discrimination or equal-protection violation resulting from the defendants enforcement of the relevant regulations of the MHSAA.

1. Extracurricular activities are not noncore classes in which a student enrolled in a private school that does not offer the noncore classes may have a statutory right to enroll. Noncore classes are nonessential elective courses that need not be taught in nonpublic schools. Unlike noncore programs taught in schools, extracurricular activities are not required. Participation in interscholastic sports is a privilege, not a right. Compliance with the MHSAA rules is an appropriate and justifiable condition of the privilege of participating in interscholastic athletics under the auspices of the MHSAA.

2. There is a legal distinction between physical education classes that are educational requirements and extracurricular interscholastic athletic activities that are not required by the state's educational system.

3. Michigan law does not provide the plaintiffs with a basis for a legitimate claim of entitlement to participation in interscholastic athletics. The law merely allows a school district to participate in interscholastic athletics and does not mandate such participation.

4. The trial court properly found that the plaintiffs' choice to be homeschooled is not unconstitutionally burdened by the MHSAA's enrollment requirement.

5. The MHSAA enrollment requirement is neutral on its face; therefore, the proper test with regard to the plaintiffs' equal-protection challenge is whether the enrollment requirement is rationally related to a legitimate governmental purpose.

6. Participation in high school interscholastic athletics does not constitute the exercise of a fundamental right.

7. The plaintiffs failed to show that the challenged requirements fail to promote their stated purpose of eliminating recruiting or the use of "ringers" in high school athletics. That goal is a legitimate governmental purpose.

Affirmed.

SCHOOLS — EXTRACURRICULAR INTERSCHOLASTIC ATHLETIC PROGRAMS.

Enforcement of regulations of the Michigan High School Athletic Association that require all participants in high school extracurricular interscholastic athletic programs to be enrolled in a public school for at least twenty hours a week serves a legitimate governmental purpose of eliminating recruiting or the use of "ringers" in high school athletics and does not violate the statutory or constitutional rights of minors, and their parents, who are homeschooled and are ineligible for participation in interscholastic athletics under the auspices of the association because they do not attend a public school at least twenty hours a week.

Thomas More Law Center (by *Richard Thompson* and *Patrick T. Gillen*) for the plaintiffs.

*Thrun, Maatsch and Nordberg, P.C.* (by *Lisa L. Swem*), for Kenowa Hills Public Schools, Ypsilanti Public School District, and Caro Community Schools.

*Edmund J. Sikorski, Jr., P.C.* (by *Edmund J. Sikorski, Jr.*), for the Michigan High School Athletic Association.

Amicus Curiae:

*Brad A. Banasik* for Michigan Association of School Boards.

Before: METER, P.J., and TALBOT and BORRELLO, JJ.

BORRELLO, J. Plaintiffs appeal by right from the trial court's grant of summary disposition under MCR 2.116(C)(10). The plaintiffs' children, who are home-schooled by their parents, sued through their parents as next friends when defendant school districts and defendant Michigan High School Athletic Association (MHSAA) refused to allow the children to participate in defendants' interscholastic athletic programs. In their six-count complaint seeking a permanent injunction, plaintiffs alleged that defendants' refusal violated their statutory and constitutional rights.[1] Specifically plaintiffs claim that they suffer by not being able to participate in extracurricular athletic activities. They contend that denial of the right to participate in extracurricular sports activities denies them an equal opportunity to receive collegiate athletic scholarships, thereby denying them equal protection under the law. Because we find that the statutes at issue do not require defendants to allow nonenrolled students to take part in the athletic programs and because we find no religious discrimination or equal-protection violation, we affirm the trial court's dismissal.

---

[1] Plaintiffs also alleged a violation of the Michigan Civil Rights Act, MCL 37.2101 *et seq.*, but the trial court's dismissal of that claim is not an issue on appeal.

I. FACTS

The next friends homeschool their children "in order to fulfill their God-given responsibility to raise children that know, love, and serve God and their fellow man," and to "ensure that the education provided to their children integrates their religious beliefs on a curriculum-wide basis and to minimize the influence of other world-views (e.g. secular humanism/scientific naturalism) and other persons (e.g. peers and other authority figures) which threaten to undermine those sincerely held religious beliefs."

To supplement their children's education, the next friends sought their children's participation in extracurricular interscholastic athletic programs in the school districts where they reside. Defendant school districts informed the next friends that their children could not participate in the districts' extracurricular interscholastic athletic programs unless they were enrolled in a public school within that district for at least twenty hours a week. Defendant school districts explained this was in accord with the MHSAA rules, which all school districts must follow to participate in the MHSAA's extracurricular interscholastic athletic programs.

Defendant school districts voluntarily joined the MHSAA. At issue in this case are the MHSAA enrollment regulations that provide:

> To be eligible for interscholastic athletics, a student must be enrolled in a high school . . . not later that [sic] the fourth Friday after Labor Day (1st semester) or the fourth Friday of February (2nd semester). Unless a specific exemption is stated in this or Section 8, a student must be enrolled in at least twenty (20) credit hours . . . in the school for which he or she competes.

The MHSAA defines "enrolled" as "actually having attended one or more classes in a school as well as the appearance of a student's name on the books of the school." If a student attends a school that does not have an extracurricular interscholastic sports program, the student may participate in another school's athletic program, as long as the student is enrolled in and passing at least twenty credit hours. If a school allows a student who is not enrolled in accord with the MHSAA regulations to participate in its interscholastic athletic program, the school is sanctioned by forfeiting any victory to its opponents, and team records are stricken. Perhaps most importantly, any school with unsanctioned students is denied the opportunity to participate in the championship tournaments conducted under the auspices of the MHSAA. The MHSAA cites a variety of reasons for its enrollment regulation; foremost among them is to prevent recruiting or "ringers" in high school athletics.

## II. STATUTORY RIGHT TO PARTICIPATE

Plaintiffs first argue that the trial court erred because students not enrolled in a public school are allowed to enroll in noncore programs. To support this contention, plaintiffs cite MCL 380.10, MCL 380.1147, and our Supreme Court's rationale in *Snyder v Charlotte Pub School Dist*, 421 Mich 517; 365 NW2d 151 (1984).

The Michigan Constitution, Const 1963, art 8, § 2, requires the Legislature to establish a "system of free public elementary and secondary schools . . . ." MCL 380.10 of the Revised School Code states:

It is the natural, fundamental right of parents and legal guardians to determine and direct the care, teaching, and education of their children. The public schools of this state

serve the needs of the pupils by cooperating with the pupil's parents and legal guardians to develop the pupil's intellectual capabilities and vocational skills in a safe and positive environment.

MCL 380.1147 states:

(1) A person, resident of a school district not maintaining a kindergarten and at least 5 years of age on the first day of enrollment of the school year, shall have a right to attend school in the district.

(2) In a school district where provision is made for kindergarten work, a child, resident of the district, is entitled to enroll in the kindergarten if the child is at least 5 years of age on December 1 of the school year of enrollment. In a school district which has semiannual promotions, a child, resident of the district, is entitled to enroll in kindergarten for the second semester if the child is at least 5 years of age on March 1 of the year of enrollment.

In *Snyder, supra,* our Supreme Court held that a student enrolled in a private school that did not offer a band class could enroll in a public school's band class because the band class was a noncore class in which the student had a statutory right to enroll. The Court defined noncore classes as nonessential elective courses that need not be taught in nonpublic schools, including classes such as science, band, shop, domestic science, and advanced math. *Snyder, supra* at 540.

Certainly, the plain meaning of MCL 380.10 gives parents and legal guardians the fundamental right to determine and direct the education and teaching of their children, and it requires public schools to cooperate with the pupil's parents and legal guardians in developing the pupil's intellectual capacities and vocational skills. But plaintiffs have not asserted that interscholastic sports develop either their intellectual capacities or vocational skills. Rather, they rely on their

proposition that the athletic programs are noncore classes as defined by our Supreme Court in *Snyder, supra.* They contend that extracurricular athletic programs are noncore classes because they are offered as an extension of the classroom and are part of defendants' educational mission. We disagree.

Our Supreme Court's decision in *Snyder* was in response to legal challenges surrounding the passage of what was then known as "Proposal C," which forbade using public monies to support nonpublic schools. In *Snyder,* our Supreme Court affirmed the long-established practice of "shared time" where students enrolled in nonpublic schools are permitted to attend public schools for instruction, stating:

> By couching § 1147 in terms of a child's "right" and "entitlement" to attend school, the Legislature wished to prevent public school districts from arbitrarily refusing admission to children who live in the district and meet the age requirements. Note that under [MCL 380.1561(1)], parents and guardians must send their children to public schools. There is no requirement that the school be in the district in which the child resides. When read together, § 1147 and § 1561 guarantee children the right to attend neighborhood public schools, but gives them the option of obtaining their education at other facilities. [*Snyder, supra* at 528 n 3.]

Additionally, because the court determined that band constituted a noncore course, the Court held that a student had a statutory right to participate. The Court did not opine or even suggest that nonpublic school students were entitled to participate in extracurricular interscholastic athletic events, and nothing in the *Snyder* opinion dictates that conclusion.

Unlike noncore programs taught in schools, extracurricular activities are not required. *Attorney General v East Jackson Pub Schools,* 143 Mich App 634, 636;

372 NW2d 638 (1985). Our courts have recognized a difference between noncore programs and extracurricular activities within the mandates prescribed by MCL 380.10 and MCL 380.1147(1).

In addition to finding a demarcation between noncore programs and extracurricular activities, our courts have also held that participation in interscholastic sports is a privilege, not a right. In *Cardinal Mooney High School v MHSAA*, 437 Mich 75; 467 NW2d 21 (1991), our Supreme Court held that "compliance with MHSAA rules on the part of student athletes is an appropriate and justifiable condition of the privilege of participating in interscholastic athletics under the auspices of the MHSAA." *Id.* at 81, and also quoted in *Kirby v MHSAA*, 459 Mich 23, 34; 585 NW2d 290 (1998).

Plaintiffs also argue that because MCL 380.1502(1) mandates that all physically fit students take a course in physical education, and because MCL 380.1502(2) allows students to receive credit to meet the physical education requirement for participation in extracurricular activities involving physical activity, such activities are analogous to noncore courses. But our Supreme Court, following the Indiana Supreme Court's reasoning, has held that there is a legal distinction between a physical education class and interscholastic athletics. See *Cochrane v Mesick Consolidated School Dist Bd of Ed*, 360 Mich 390; 103 NW2d 569 (1960). In *Cochran*, our Supreme Court stated:

> *State, ex rel. Indiana High School Athletic Assn., v. Lawrence Circuit Court*, [240 Ind 114, 122-123; 162 NE2d 250 (1959)], points out a distinction between interscholastic athletics and the physical training contemplated by State statute. Physical training is a course of training for all of the pupils of a school and not for a select few. It may, but does not necessarily, include football and certainly not interscholastic games. Football contests between schools

are extracurricular in nature. The right to provide such activities is clearly recognized. Constitutional provisions and statutes giving the right to receive education and physical training cannot properly be said to include interscholastic sports as a necessary requirement of education. [*Id.* at 418.]

Thus, our courts distinguish between areas of instruction that are educational requirements and extracurricular interscholastic athletic activities that are not required by the state's educational system.

This Court revisited this issue in *Berschback v Grosse Pointe Pub School Dist*, 154 Mich App 102; 397 NW2d 234 (1986), holding that "[e]xtra-curricular interscholastic athletic programs are not statutorily mandated courses of instruction." *Id.* at 119, citing MCL 380.1502. MCL 380.1502 "only requires a school district to provide a course in physical education, not interscholastic athletic programs. In addition, the language of MCL 380.1521; MSA 15.41521 makes it clear that the participation of a school district in an interscholastic athletic association is merely permissive and not required." *Berschback, supra* at 119. Thus, consistent with our previous reasoning, we hold in this case that "[b]ased on the fact that Michigan statutory and case law merely allows a school district to participate in interscholastic athletics and does not mandate such participation, we conclude that Michigan law does not provide plaintiffs with a basis for a legitimate claim of entitlement to participation in interscholastic athletics." *Id.* at 119.

In sum, we hold that Michigan statutes do not require public schools to admit homeschooled students to their athletic programs and that plaintiffs do not have a statutory right to participate in extracurricular interscholastic athletic events.

### III. FREEDOM OF RELIGION

Plaintiffs next contend that defendants have conditioned participation in the extracurricular interscholastic athletic programs in such a way that it violates their right to freely practice their religion. Plaintiffs argue that to exercise their religious freedom, they must be homeschooled. Because they desire to participate in extracurricular interscholastic athletic events, they contend that the MHSAA's enrollment requirement denies their right to freely exercise their religion by being educated at home. Additionally, they argue that the state may not condition their participation in extracurricular interscholastic athletic events on forfeiture of their constitutionally guaranteed right to freely practice their religious beliefs. The trial court held that plaintiffs' choice to be homeschooled is not unconstitutionally burdened by the MHSAA's enrollment requirement, and we agree.

Because the regulations set forth by the MHSAA constitute state action, we analyze plaintiffs' claim that the statute violates their religious freedom under Const 1963, art 1, § 4 using the compelling state interest test set forth in *McCready v Hoffius*, 459 Mich 131; 586 NW2d 723 (1998), vacated in part 459 Mich 1235 (1999):

> The test has five elements: (1) whether a defendant's belief, or conduct motivated by belief, is sincerely held; (2) whether a defendant's belief, or conduct motivated by belief, is religious in nature; (3) whether a state regulation imposes a burden on the exercise of such belief or conduct; (4) whether a compelling state interest justifies the burden imposed upon a defendant's belief or conduct; and (5) whether there is a less obtrusive form of regulation available to the state. [*Id.* at 144, citing *Wisconsin v Yoder*, 406 US 205, 214-230; 92 S Ct 1526; 32 L Ed 2d 15 (1972).]

We concur with the trial court that plaintiffs have met the first two elements. The question for this Court is whether this state regulation imposes a burden on the exercise of plaintiffs' belief or conduct. Our Supreme Court set forth the elements of whether a state regulation imposes a burden on the exercise of a religious belief in *People v DeJonge (After Remand)*, 442 Mich 266; 501 NW2d 127 (1993), stating:

> A burden may be shown if the "affected individuals [would] be coerced by the Government's action into violating their religious beliefs [or whether] governmental action [would] penalize religious activity by denying any person an equal share of the rights, benefits, and privileges enjoyed by other citizens." Hence, "[a] claimed burden on religious beliefs may be deemed constitutionally insignificant, but only (1) if the claimant's beliefs do not create an irreconcilable conflict between the mandates of law and religious duty, or (2) if the legal requirement does not directly coerce the claimant to act contrary to religious belief . . . ." Put simply, the petitioner must prove that he has been "enforced, restrained, molested, or burdened . . . [or] otherwise suffer[ed], on account of his religious opinions or beliefs . . . ." The burden on religious liberty, however, need not be overwhelming, because "[e]ven subtle pressure diminishes the right of each individual to choose voluntarily what to believe." [*Id.* at 283-284 (internal citations omitted).]

In *DeJonge, supra,* the parents of homeschooled students argued that Michigan's requirement that all children be taught by certified teachers violated their religious beliefs because the parents believed that they were mandated by the scriptures to teach their children and that complying with the statute would require them to sin against God. *Id.* at 271 n 4. The parents also were troubled by the fact that they perceived that

many of the courses required by the state were based on " 'a false and pagan religion known as secularism or secular humanism.' " *Id.*

We find *DeJonge* inapplicable because the MHSAA enrollment requirement does not inescapably compel conduct that plaintiffs find objectionable for religious reasons. *Id.* at 285. Unlike the parents in *DeJonge,* who were faced with criminal violations of state law for exercising the freedom to practice their religious beliefs, the MHSAA enrollment requirements do not infringe on plaintiffs' right to be homeschooled. Nor do the enrollment requirements subject the next friends to criminal prosecution. Rather, by exercising their right to practice their religion through homeschooling, plaintiffs and the next friends made a choice between homeschooling and having the children participate in extracurricular interscholastic athletic competition. Moreover, the next friends' desire to have their children participate in extracurricular interscholastic athletic activities runs counter to their stated religious purpose to "ensure that the education provided to their children integrates their religious beliefs on a curriculum-wide basis and to minimize the influence of other world-views (e.g. secular humanism/scientific naturalism) and other persons (e.g. peers and other authority figures) which threaten to undermine those sincerely held religious beliefs."

In *Cardinal Mooney, supra* at 81, our Supreme Court stated that "compliance with MHSAA rules on the part of student athletes is an appropriate and justifiable condition of the privilege of participating in interscholastic athletics under the auspices of the MHSAA."

Because the next friends are free to homeschool their children under the MHSAA regulation, we cannot find a nexus between the plaintiffs' right of freedom of religion and the MHSAA's enrollment requirement. Nor can we

find that the next friends have been, as they claim, "coerced by the Government's action into violating their religious beliefs." For the reasons set forth, we hold that the MHSAA regulation does not constitute a legally sufficient impediment on plaintiffs' freedom to exercise their religious beliefs.

## IV. EQUAL PROTECTION

Finally, plaintiffs contend that defendants' enrollment requirement creates a classification scheme that deprives plaintiffs of their rights to equal protection of the law. The essence of plaintiffs' contention is that the enrollment requirement is actually a scheme to benefit that class of citizens who enroll their children in public schools by doling out athletic scholarships and restricting participation. Of course it is pure speculation that a student participating in an extracurricular athletic event will receive an athletic scholarship. Plaintiffs' contention is that they should at least have access to the opportunity to receive an athletic scholarship to attend a public institution of higher education. We disagree. Plaintiffs merely assert this argument without supplying this Court with any evidence that there is a legally cognizable cause of action under the Equal Protection Clause of the Michigan or United States constitutions to a right to an athletic scholarship, predicated solely upon the denial of participation because of homeschooling.

The next friends also argue that the regulation denies them the fundamental right to supervise the education of their children pursuant to their religious convictions, and, therefore, we should apply a "strict scrutiny" analysis to the regulation. The trial court held that the next friends failed to prove they were treated

differently from similarly situated individuals. We affirm the judgment of the trial court, but on different grounds.

In *Doe v Dep't of Social Services*, 439 Mich 650; 487 NW2d 166 (1992), our Supreme Court set forth the applicable test in such cases:

> Thus, when legislation is challenged as violative of the equal protection guarantee under either constitution, it is subjected to judicial scrutiny to determine whether the goals of the legislation justify the differential treatment it authorizes. As the Court of Appeals panel concedes, in deciding such cases the appellate courts of this state have employed a mode of analysis similar to that which has been developed by the United States Supreme Court. Generally speaking, legislation challenged on equal protection grounds is accorded a presumption of constitutionality, and it is reviewed by applying a rational basis standard. Under that standard, a statute will not be struck down if the classification scheme it creates is rationally related to a legitimate governmental purpose. [*Id.* at 661-662 (internal citations omitted).]

We hold that the MHSAA enrollment requirement is neutral on its face. It applies equally to everyone. The requirement does not single out any person on the basis of the person's membership in a particular class or the person's religious beliefs. Thus, strict scrutiny is not appropriate; rather, we must employ a rational basis level of scrutiny and discern whether the regulation is rationally related to a legitimate governmental purpose.

In *Berschback, supra,* this Court noted that the United States Supreme Court "has held that public education itself is not a fundamental right for purposes of equal protection analysis." *Berschback, supra* at 114, citing *San Antonio Independent School Dist v Rodriguez*, 411 US 1; 93 S Ct 1278; 36 L Ed 2d 16 (1973). Thus, we concluded that "participation in high school

interscholastic athletics does not constitute exercise of a fundamental right." *Berschback, supra* at 114, citing *San Antonio, supra.* We further recognize that "[u]nder traditional equal protection analysis where classifications do not involve a suspect class or a fundamental right, once a legitimate regulatory purpose has been identified, the only question remaining is whether the rule makers reasonably believed that use of the challenged classification would promote that purpose." *Berschback, supra* at 114. Thus, the only question left to resolve is whether the rule makers reasonably believed that use of the challenged classification would promote their stated purpose. We find that it does. Plaintiffs have not directed us to any fact that rebuts the contention of the MHSAA that the stated goal of the enrollment requirement was to eliminate recruiting or the use of "ringers" in high school athletics. That goal is a legitimate governmental purpose.

Affirmed.

METER, P.J., concurred.

TALBOT, J. I concur in result only.