FIFTH DIVISION
February 16, 2007

No. 1-05-1525

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | |
| | ) | |
| JOSE PAREDES, | ) | |
| | ) | Appeal from the |
| Petitioner-Appellee, | ) | Circuit Court of |
| | ) | Cook County |
| and | ) | |
| | ) | |
| MARIA PAREDES, | ) | Honorable |
| | ) | Charles Winkler, |
| Respondent | ) | Judge Presiding. |
| | ) | |
| (The Department of Healthcare and Family Services, | ) | |
| | ) | |
| Intervenor-Appellant). | ) | |
| | ) | |

JUSTICE O'MARA FROSSARD delivered the opinion of the court:

When Jose Paredes and Maria Paredes divorced, Jose was ordered to pay child support to the Illinois Department of Public Aid, now known as the Illinois Department of Healthcare and Family Services (the Department). After the couple's child was emancipated, Jose and the Department litigated the issue of arrearage. In determining the total arrearage due, the circuit court credited Jose $13,505 for payments he made directly to Maria which she did not turn over to the Department. On appeal, the Department contends that the circuit court erred in crediting Jose for payments the Department never received and which had been made directly to Maria in violation of court order.

## BACKGROUND

On August 17, 1990, Jose and Maria appeared in the circuit court on Jose's petition to dissolve their marriage. The parties stipulated that all issues were uncontested. Pursuant to the parties' settlement agreement, Maria would have sole custody of their minor child and Jose would have visitation.

Jose testified as follows regarding the settlement agreement's provisions on child support payments:

"Q. [Jose's attorney:] You're going to pay the clerk of the circuit court?

A. Yes.

Q. That's the sum of seventy-five dollars per week as and for child support. You agree to that, am I correct?

A. Yes.

* * *

Q. To the best of your knowledge, is the child on public aid now?

A. Yes.

Q. The child is on public aid?

A. Yes.

Q. So, any payments are going to be made through the clerk of the circuit court and end up going to public aid, you understand

that?

A. Yes, I understand."

After reviewing the entire settlement agreement with his attorney, Jose stated that he understood the agreement and did not have any questions about it.

Maria testified that both she and the child were receiving public aid. She stated that she heard the terms of the settlement agreement when it was reviewed during Jose's testimony, agreed it had been stated correctly and adequately, and had no questions concerning the agreement. At the conclusion of the dissolution hearing, the circuit court ordered the parties to prepare an agreed judgment for dissolution of marriage and to present it, along with the transcript of the hearing, in 28 days.

On September 18, 1990, the circuit court entered the judgment for dissolution of marriage. In relevant part, the written judgment provided as follows: "Husband shall pay to the CLERK OF THE CIRCUIT COURT for the use of [the Department] $75.00 per week as and for child support."

On February 8, 2002, the Department served an order for withholding on Jose's employer, alleging a support arrearage of $42,825 as of that date. Shortly thereafter, the Department filed a petition on Maria's behalf to continue support until the child graduated from high school, and Jose filed a motion to correct the arrearage owed to the Department. On June 19, 2002, the circuit court entered an agreed order in the matter. In relevant part, the order provided that Jose's child support obligation terminated on June 17, 2002, when the child graduated from high school, and that the Department was to conduct an account adjustment review by the next court date, specifying the amount of unreimbursed public aid obtained by Maria.

The Department conducted a review and prepared a support calculation worksheet. The Department's review indicated that Maria received public assistance from September 1990 to July 2001; that $34,928 of assistance was provided by the Department but not reimbursed through the payment of support; and that Jose owed $33,405 in outstanding arrearage. The arrearage calculation was arrived at by multiplying the 613 weeks between the divorce judgment entered on September 18, 1990, and the child's graduation from high school on June 17, 2002, by the $75-per-week support obligation, and then subtracting $12,570 that the Department had received from Maria.

Jose disputed the Department's arrearage calculation, and on March 19, 2003, the circuit court held a hearing. At the hearing, Jose introduced cancelled checks and money orders made payable to Maria that she had cashed between 1990 and 2001. Jose testified that in 1995 or 1996, he received a letter from the Department. In response to the letter, he went to a child support office and showed "them" receipts indicating he had made payments directly to Maria. According to Jose, "they" looked at the receipts and told Jose things were fine. Jose left the meeting and continued to pay support directly to Maria.

On April 14, 2005, the circuit court entered a written order in the case. The circuit court found that Jose was entitled to a credit against his outstanding support arrearage for $26,075. This amount was comprised of the $12,570 which was credited to Jose in the Department's accounting, and another $13,505 which Jose paid directly to Maria and which was not credited in the Department's accounting. The court found, "as a matter of law, that any payments made directly from Jose Paredes to Maria Paredes and never credited by [the Department] (as shown in the Certified Accounting) are child support payments within the meaning of the [Illinois Marriage and

Dissolution of Marriage Act] and the Judgment for Dissolution of Marriage." Accordingly, the circuit court ordered that a child support arrearage of $19,900 existed, calculated by subtracting $26,075 from the $45,975 owed, and entered a separate order requiring Jose to pay $200 per month on the arrearage.

ANALYSIS

In general, matters involving child support and the judicial determination of a child support arrearage are reviewed for abuse of discretion. *In re Marriage of Burns*, 357 Ill. App. 3d 468, 470 (2005). However, when a child support case presents a question of law, the standard of review is *de novo*. *In re Marriage of Rogers*, 213 Ill. 2d 129, 136 (2004). In this appeal, the Department contends that the circuit court erred in calculating the total child support arrearage by crediting Jose $13,505 for the payments he made directly to Maria and which she did not turn over to the Department. In essence, we must determine the legal effect of direct payments to a custodial parent when the Department is owed the money. Accordingly, our review is *de novo*.

The Department presents four arguments as to why the circuit court's decision to credit Jose for the $13,505 in question was in error and should be reversed. We address these arguments in turn.

I. Party to Whom Support Was Owed

The Department argues that Jose owed support to the Department, not Maria, and that the circuit court's order is contrary to the assignment provision in section 10-1 of the Illinois Public Aid Code (305 ILCS 5/10-1 (West 2004)). Section 10-1 provides in relevant part as follows:

> "By accepting financial aid under this Code, a spouse or a
>
> parent or other person having custody of a child shall be deemed to

> have made assignment to the Illinois Department for aid under Articles III, IV, V and VII or to a local governmental unit for aid under Article VI of any and all rights, title, and interest in any support obligation up to the amount of financial aid provided. The rights to support assigned to the Illinois Department of Public Aid or local governmental unit shall constitute an obligation owed the State or local governmental unit by the person who is responsible for providing the support, and shall be collectible under all applicable processes."
>
> 305 ILCS 5/10-1 (West 2004).

This section has been interpreted to mean that a recipient of public aid automatically assigns all rights, title, and interest in child support payments, up to the amount of public aid received, to the governmental unit providing the public aid; and correspondingly, that the person making the child support payments is obligated to the government. *In re Marriage of Clark*, 170 Ill. App. 3d 690, 692 (1988). Because the child support payments are owed to the government, the government becomes a party in interest in enforcing payment of child support when public aid is involved. *People ex rel. Sheppard v. Money*, 124 Ill. 2d 265, 277 (1988).

Here, the record establishes that Maria received public aid from September 1990 to July 2001. Under the plain language of section 10-1, during that time, Maria automatically assigned to the Department her rights to receive child support payments to the extent she received public aid, and Jose was obligated to make those child support payments to the Department. As noted by the Department, it is a separate and distinct party in support proceedings. See *In re Marriage of*

*Mesecher*, 272 Ill. App. 3d 73, 78 (1995); *Department of Public Aid ex rel. Stark v. Wheeler*, 248 Ill. App. 3d 749, 751 (1993). Accordingly, we agree with the Department that Jose's payments to Maria cannot be counted against the debt he owes the Department and that the circuit court's determination to the contrary is in error.

## II. Court-Ordered Method for Payment

Next, the Department argues that the circuit court's order is contrary to the original divorce judgment, which directed Jose to pay support to the Department through the clerk of the circuit court. As noted above, the judgment for dissolution of marriage provided that Jose was to "pay to the CLERK OF THE CIRCUIT COURT for the use of [the Department] $75.00 per week as and for child support." Despite this language, Jose made numerous child support payments directly to Maria. The Department argues that because this arrangement was not approved by the circuit court, it was void.

The modification of a child support obligation is an exclusive judicial function. *Blisset v. Blisset*, 123 Ill. 2d 161, 167 (1988); *In re Marriage of Jungkans*, 364 Ill. App. 3d 582, 584 (2006). In order to modify a court-ordered child support obligation, parents must petition the court and obtain judicial approval of any changes. *Blisset*, 123 Ill. 2d at 168. Any private modification made by the parents without judicial approval is unenforceable. *Blisset*, 123 Ill. 2d at 168; *Jungkans*, 364 Ill. App. 3d at 584.

In the instant case, the Department asserts that the divorce judgment was never modified in court. Jose does not dispute this assertion, and our review of the record has not revealed any evidence that the circuit court approved of Jose and Maria's modification of the order that payments

be made to the clerk for the use of the Department. Accordingly, the modification was not enforceable. Because the modification was unenforceable and void, the original arrangement in the judgment for dissolution remained in effect.

The judgment for dissolution of marriage indicated that Jose was to make child support payments to the clerk of the circuit court for the use of the Department. Where an order directs that child support payments be made to a specific entity or person, payments that are made to a different entity or person may not be credited in arrearage calculations. See *In re Marriage of Dwan*, 108 Ill. App. 3d 808, 813-14 (1982) (rejecting argument that circuit court erred in refusing to give father credit toward child support arrearage for payments made to third parties); *In re Marriage of Bjorklund*, 88 Ill. App. 3d 576, 580 (1980) ("it was error for the trial court to allow a set-off against the arrearages for the amount paid directly by respondent to his adult children as respondent never petitioned the court for modification of the child support award"). To allow credit toward arrearages for such payments would undermine the function of the court to determine any change or modification in child support payments. *Bjorklund*, 88 Ill. App. 3d at 580. In the instant case, given the child support payment arrangement provided for in the judgment of dissolution of marriage, the circuit court erred in crediting Jose for the payments he made directly to Maria and which she did not report to the Department.

### III. Public Policy

Third, the Department argues that the circuit court's decision is contrary to public policy. The Department asserts that the decision thwarts its ability to effectively collect support because it creates an incentive for parties who owe the Department not to pay through the clerk's office. In support

of this argument, the Department cites the Illinois Supreme Court's decision in *Sheppard*, which provides as follows:

> "Illinois has a strong interest in preserving and promoting the welfare of children. [Citation.] Indeed, it is difficult to imagine a more compelling State interest than the support of children. Illinois also has a general interest in effective enforcement of judgments. And the State has a fiscal and administrative interest in reducing the costs and burdens of these procedures. The State also has a significant financial interest in obtaining payment in accordance with the court-ordered support obligations. The money collected is to repay the State for [public] benefits which have been paid by the State to the custodial parent or child." *Sheppard*, 124 Ill. 2d at 277.

The Department argues that the circuit court's decision in the instant case also frustrates the ability of the Department to effectively monitor the payment of support because tracing individual private payments is simply cost-prohibitive. Finally, the Department argues that the circuit court's decision renders superfluous section 709(b) of the Illinois Marriage and Dissolution of Marriage Act, which provides that for every child support order entered in Cook County where the person entitled to payment is receiving public aid, the circuit court shall direct "that such payments be made to the clerk of the court." 750 ILCS 5/709(b)(1) (West 2004).

The Department's arguments regarding public policy are well-taken. Viewed in conjunction with our determinations above, the public policy considerations presented by the Department support

our decision to reverse the circuit court's judgment.

### IV. Authority from Other Jurisdictions

Finally, the Department argues that other states have expressly recognized that payments to a custodial parent cannot be credited against an arrearage owed to the state. Given our determination that the circuit court's order must be reversed based on Illinois authority, we decline to address the authority of other jurisdictions.

### CONCLUSION

For the reasons explained above, we reverse the judgment of the circuit court granting Jose a credit of $13,505 against the total arrearage balance owed to the Department for payments made directly to Maria and not received by the Department. Under section 10-1 of the Illinois Public Aid Code, Maria automatically assigned to the Department her right to receive child support payments to the extent she received public aid, and Jose was obligated to make those child support payments to the Department. 305 ILCS 5/10-1 (West 2004). In addition, the original judgment for dissolution of marriage indicated that Jose was to make child support payments to the clerk of the circuit court for the use of the Department. Jose and Maria's modification of this arrangement was not court authorized and therefore was unenforceable. In this case, the child support payments at issue were due to the Department. Accordingly, when calculating the amount of arrearage owed, the circuit court erred in crediting the payments Jose made directly to Maria and that the Department never received. Finally, public policy considerations support the reversal of the circuit court's order.

We are mindful of Jose's arguments that the true party in error in this case is Maria and that it would "violate fundamental principles of justice, equity and good conscience" to make him "pay

money twice [while Maria is] able to keep $13,505 over what she was entitled to receive without any obligation of her making repayment to the State." However, we agree with the Department that Maria's potential liability does not affect the existence of Jose's liability, and that a debtor may not receive credit for payments not actually received by the creditor. Nevertheless, we emphasize that our decision in this appeal does not foreclose or limit Jose's ability to file a private action against Maria under a theory of, for example, contribution, indemnification, or unjust enrichment, to recover the $13,505 he paid directly to her and which she did not report to the Department.

For the reasons explained above, we reverse the judgment of the circuit court.

Reversed.

TULLY and GALLAGHER, JJ., concur.