CHAMPION v SECRETARY OF STATE

Docket No. 277337. Submitted September 3, 2008, at Lansing. Decided
October 16, 2008, at 9:00 a.m. Leave to appeal sought.

Cary M. Champion brought an action in the Court of Claims against the
Secretary of State, alleging that the defendant's refusal to renew his
driver's license unless he provides his social security number to the
defendant, and the defendant's rejection of the religious ground the
plaintiff asserted in refusing to provide his number, violated Const
1963, art 1, § 4 (freedom of worship and religious belief) and Const
1963, art 1, § 2 (equal protection). The plaintiff, relying on the Tenth
Amendment and US Const, art I, § 8 (the Spending Clause), also
sought a declaratory ruling that the state of Michigan had engaged in
unconstitutional activity by entering into a contract with the federal
government pursuant to which the state receives federal funds for
child-support enforcement in exchange for the state's compliance
with federal law requiring the procurement of social security num-
bers from driver's license applicants. The court, Beverley Nettles-
Nickerson, J., granted summary disposition for the defendant. The
plaintiff appealed.

The Court of Appeals *held*:

1. MCL 257.307(1)(a), which requires driver's license applicants
to provide their social security numbers to the defendant, is not
violative of Const 1963, art 1, § 4. The "compelling state interest" test
is used for determining whether a statute, as applied to a person,
violates art 1, § 4. Examined under that test are: (1) whether the
person's belief, or conduct motivated by belief, is sincerely held, (2)
whether the person's belief, or conduct motivated by belief, is
religious in nature, (3) whether the statute imposes a burden on the
exercise of that belief or conduct, (4) whether a compelling state
interest justifies the burden imposed on the person's belief or
conduct, and (5) whether there is a less obtrusive form of regulation
available to the state. In this case, the plaintiff's beliefs regarding
social security numbers, and his conduct motivated by those beliefs,
are genuine and sincere. It is also not disputed that the plaintiff's
beliefs and the actions taken by him in furtherance of those beliefs
are religious in nature, arising from his interpretation of the mark of
beast in the Book of Revelation of the New Testament. Whether the

plaintiff's exercise of his religious beliefs was truly burdened by MCL 257.307(1)(a) need not be addressed in light of the analysis of the remaining two factors. The Child Support and Establishment of Paternity Act (CSEPA), 42 USC 651 *et seq.*, and its requirement under 42 USC 666(a)(13)(A) that driver's license applicants furnish their social security numbers, as incorporated by MCL 257.307(1)(a), serve compelling state interests in the establishment of paternity, the tracking and locating of parents legally obligated to pay child support, the enforcement of support obligations, and the collection of support payments. Finally, there are no less restrictive or obtrusive means available to promote the compelling state interests. The reporting of social security numbers on driver's license applications is essential to accomplishing the state interests.

2. The plaintiff's claim of a violation of his right to equal protection under Const 1963, art 1, § 2 lacks merit. The plaintiff is not similarly situated as persons who do not have to report a social security number because they do not have one. Equal protection does not require that the same treatment be given those who are not similarly situated.

3. The state's participation under the CSEPA does not constitute an unconstitutional state-federal contract under the Spending Clause or the Tenth Amendment. Congress's enactment of the CSEPA under the Spending Clause, and specifically in relation to the requirement that driver's license applicants furnish social security numbers, did not induce the state to engage in unconstitutional activities relative to the free exercise of religion, given that MCL 257.307(1)(a) does not violate Const 1963, art 1, § 4. The offer of benefits to a state by the federal government upon cooperation by the state with federal plans, presumably for the general welfare, does not violate the Tenth Amendment limitation on congressional regulation of state affairs.

Affirmed.

*Cary M. Champion*, *in propria persona*.

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, and *Kevin L. Francart*, Assistant Attorney General, for the defendant.

Before: DONOFRIO, P.J., and MURPHY and FITZGERALD, JJ.

MURPHY, J. Plaintiff appeals as of right the trial court's order granting summary disposition in favor of defendant in this action arising out of plaintiff's repeated unsuccessful attempts to renew his driver's license without reporting his social security number on the renewal application. Plaintiff, citing his right to freely exercise his religious beliefs,[1] refused to furnish his social security number as demanded by defendant pursuant to the requirements of MCL 257.307(1)(a). On appeal, plaintiff raises numerous constitutional and statutory issues. We affirm.

This Court reviews de novo a trial court's ruling on a motion for summary disposition. *Kreiner v Fischer*, 471 Mich 109, 129; 683 NW2d 611 (2004). Issues of statutory construction and questions of constitutional law are likewise reviewed de novo on appeal. *Feyz v Mercy Mem Hosp*, 475 Mich 663, 672; 719 NW2d 1 (2006); *Wayne Co v Hathcock*, 471 Mich 445, 455; 684 NW2d 765 (2004).

In his complaint, plaintiff alleged that defendant, by refusing to allow him to renew his license without submitting his social security number and by rejecting the religious grounds given for his stance, knowingly and willfully violated Const 1963, art 1, § 4 (freedom of worship and religious belief), violated Const 1963, art 1, § 2 (equal protection),[2] and violated MCL 257.307(13). In his

---

[1] In plaintiff's appellate brief, he reveals his "religious belief that social security numbers are at best an immediate precursor to the mark of the beast, described in the Book of Revelation at Chapter 14, verses 16-17, and Chapter 20, verse 4."

[2] We note that these two constitutional challenges to the social security number requirement found in MCL 257.307(1)(a) are not facial challenges, but rather challenges to the enforcement of the provision against plaintiff or, worded differently, "as applied" challenges. "When faced with a claim that application of a statute renders it unconstitutional, the Court must analyze the statute 'as applied' to the particular case." *Crego v Coleman*, 463 Mich 248, 269; 615 NW2d 218 (2000).

prayer for relief, plaintiff requested renewal of his license without fee, cost, or payment, retroactive renewal to the expiration date of his last license, the drafting of a standard form by defendant, in accordance with MCL 257.307(13), for use by individuals who, for religious reasons, do not want to divulge their social security numbers in the license application and renewal process, and money damages in the amount of $10 million. Plaintiff also sought a declaratory ruling that the state engaged in unconstitutional activity by entering into a contract with the federal government pursuant to which the state receives federal child support enforcement funds in exchange for compliance with federal law dictating the procurement of social security numbers on license applications in violation of religious freedoms. This last assertion was founded on principles arising from the Tenth Amendment and the Spending Clause, art I, § 8, of the United States Constitution.[3]

MCL 257.307(1)(a) mandates that an application for an operator's or chauffeur's license contain the following:

> The applicant's full legal name, date of birth, residence address, height, sex, eye color, signature, . . . intent to make an anatomical gift, other information required or permitted on the license under this chapter, *and, only to the extent required to comply with federal law, the applicant's social security number.* . . . [Emphasis added.]

To qualify for various federal welfare funds, states must certify that they will operate a child support

---

[3] The Court of Claims adjudicated this original action, granting summary disposition in favor of defendant in cursory fashion. Defendant did not argue below, and does not argue on appeal, that plaintiff's sole avenue of relief was a driver's license appeal to the circuit court in plaintiff's county of residence pursuant to MCL 257.323. Therefore, we shall not explore that potential issue.

enforcement program that conforms to Title IV-D of the Social Security Act, as amended by the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, PL 104-193, which we shall refer to as the Child Support and Establishment of Paternity Act (CSEPA), 42 USC 651 *et seq.*, and that they will do so pursuant to an approved detailed plan. *Blessing v Freestone*, 520 US 329, 333; 117 S Ct 1353; 137 L Ed 2d 569 (1997). The states must collect overdue support payments, establish comprehensive systems to establish paternity, locate absent parents, and help families obtain support orders. *Id.* at 333-334. Pursuant to 42 USC 654(20), "[a] State plan for child and spousal support must . . . provide, to the extent required by [42 USC 666], that the State . . . shall have in effect all of the laws to improve child support enforcement effectiveness which are referred to in that section[.]" 42 USC 666(a) provides in relevant part:

> In order to satisfy [42 USC 654(20)(A)], each State must have in effect laws requiring the use of the following procedures, consistent with this section and with regulations of the Secretary, to increase the effectiveness of the program which the State administers under this part:

> \* \* \*

> (13) Recording of social security numbers in certain family matters.—Procedures requiring that the social security number of—

> (A) any applicant for a professional license, *driver's license*, occupational license, recreational license, or marriage license be recorded on the application[.]

> \* \* \*

> For purposes of subparagraph (A), if a State allows the use of a number other than the social security number to be

used on the face of the document while the social security number is kept on file at the agency, the State shall so advise any applicants. [Emphasis added.]

Because there is no dispute that Michigan operates a child support enforcement program that meets the requirements of the CSEPA and Michigan receives federal funding because of its participation, 42 USC 654(20) mandates that Michigan comply with 42 USC 666(a)(13)(A).[4] We also note that the final paragraph of 42 USC 666(a)(13) that refers to the use of a number other than a social security number does not create an exception to the recording requirement in § 666(a)(13)(A). See *Lewis v Idaho Dep't of Transportation*, 143 Idaho 418, 423 n 4; 146 P3d 684 (Idaho App, 2006) (applicant's social security number need not be recorded on the license itself, but it still must be reported or furnished by the applicant for purposes of having the information in the department file).

We first address plaintiff's arguments under former MCL 257.307(13). At the time of the license renewal efforts and the filing of the complaint, MCL 257.307(13) provided:

A requirement under this section to include a social security number on [a driver's license] application does not apply to an applicant who demonstrates he or she is exempt under law from obtaining a social security number *or to an applicant who for religious convictions is exempt under law from disclosure of his or her social security number under*

---

[4] As indicated in *Tenison v State*, 38 P3d 535, 537 (Alas App, 2001), "[t]he federal government has no authority to directly order the states to change their licensing laws, so Congress used an economic incentive: states lose a substantial portion of their federal funding for various welfare programs if they do not require all license applicants to supply their social security number." The CSEPA was enacted pursuant to congressional power under the Spending Clause. See generally *Hodges v Thompson*, 311 F3d 316 (CA 4, 2002).

*these circumstances.* The secretary of state shall inform the applicant of this possible exemption. [2004 PA 362 (emphasis added).]

Pursuant to 2008 PA 7, subsection 13 was amended, deleting the religious-conviction exemption, and it now simply provides that "[a] requirement under this section to include a social security number on an application does not apply to an applicant who demonstrates he or she is exempt under law from obtaining a social security number."

Former MCL 257.307(13) required that the applicant be "exempt under law," which necessarily directs attention to a law other than § 307(13). In *Cheeseman v American Multi-Cinema, Inc*, 108 Mich App 428, 433; 310 NW2d 408 (1981), this Court rejected an argument that the words "except where permitted by law" reflected a legislative intent to encompass solely statutory law. The *Cheeseman* panel ruled that "the term 'law' includes the entire body of law including but not limited to the constitution, the statutes, administrative rules and regulations, and the common law as embodied in decisions and judgments of courts[.]" *Id.* at 441. Thus, the use of the term "law" here includes constitutional provisions that would carve out a religion-based exception to the social security number requirement.

Aside from Tenth Amendment and Spending Clause arguments on the final appellate issue addressed later, plaintiff's complaint and arguments on appeal rely solely on Const 1963, art 1, §§ 2 and 4. Plaintiff does not place any reliance on the Free Exercise Clause or the Establishment Clause of the First Amendment of the United States Constitution, nor on the Equal Protection Clause of the Fourteenth Amendment.

Article 1, § 4, of the Michigan Constitution, which addresses freedom of religion, provides in relevant part:

Every person shall be at liberty to worship God according to the dictates of his own conscience. No person shall be compelled to attend, or, against his consent, to contribute to the erection or support of any place of religious worship, or to pay tithes, taxes or other rates for the support of any minister of the gospel or teacher of religion. . . . The civil and political rights, privileges and capacities of no person shall be diminished or enlarged on account of his religious belief.

Plaintiff's claims fit under the first and last sentences of Const 1963, art 1, § 4, because he argues that his liberty to worship according to his own conscience would be compromised if effectively forced by defendant to engage in an activity inconsistent with his religious beliefs and that his driving privileges were diminished on account of his beliefs.

Pursuant to *McCready v Hoffius*, 459 Mich 131, 143; 586 NW2d 723 (1998), vacated in part 459 Mich 1235 (1999), and *Reid v Kenowa Hills Pub Schools*, 261 Mich App 17, 27; 680 NW2d 62 (2004), we apply the compelling state interest test (strict scrutiny) to challenges under the free exercise language in Const 1963, art 1, § 4, regardless of whether the statute at issue is generally applicable and religion-neutral, which is the case here.[5] In *McCready, supra* at 143-144, the Court stated:

---

[5] In *Employment Div, Dep't of Human Resources of Oregon v Smith*, 494 US 872, 885-886; 110 S Ct 1595; 108 L Ed 2d 876 (1990), the United States Supreme Court, analyzing a case under the Free Exercise Clause of the First Amendment, held that generally applicable, religion-neutral laws that, in effect, burden a religious practice need not be justified by a compelling state interest. See also the plurality opinion in *Bowen v Roy*, 476 US 693, 702-712; 106 S Ct 2147; 90 L Ed 2d 735 (1986). *McCready* applied *Smith* to a challenge made pursuant to the Free Exercise Clause of the First Amendment, but then applied the compelling state interest test to its analysis under Const 1963, art 1, § 4. *McCready, supra* at 142-144. We note that there exists caselaw indicating that the free exercise language in Const 1963, art 1, § 4, and the Free Exercise Clause of the First Amendment are subject to similar interpretation. *Advisory*

Next, we turn to defendants' claim that the act violates their religious freedom under art 1, § 4 of the Michigan Constitution of 1963. We analyze the [issue] . . . under the compelling state interest test . . . .

The test has five elements: (1) whether a defendant's belief, or conduct motivated by belief, is sincerely held; (2) whether a defendant's belief, or conduct motivated by belief, is religious in nature; (3) whether a state regulation imposes a burden on the exercise of such belief or conduct; (4) whether a compelling state interest justifies the burden imposed upon a defendant's belief or conduct; and (5) whether there is a less obtrusive form of regulation available to the state. [Citations omitted.]

With respect to the compelling state interest test, defendant concedes that plaintiff's beliefs regarding social security numbers, and his conduct motivated by those beliefs, are genuine and sincere. And it is not

*Opinion re Constitutionality of 1970 PA 100*, 384 Mich 82, 105; 180 NW2d 265 (1970); *Weishuhn v Catholic Diocese of Lansing*, 279 Mich App 150, 156; 756 NW2d 483 (2008); *Scalise v Boy Scouts of America*, 265 Mich App 1, 11; 692 NW2d 858 (2005). However, *McCready*, being the latest pronouncement by our Supreme Court on the issue, controls our analysis and requires application of strict scrutiny under the compelling state interest test. *Washington Mut Bank, FA v ShoreBank Corp*, 267 Mich App 111, 119; 703 NW2d 486 (2005) ("We are obligated to follow the most recent pronouncement of the Supreme Court on a principle of law."). The Michigan Supreme Court in *Donkers v Kovach*, 481 Mich 897 (2008), recently voted to deny an application for leave to appeal in a case involving witness oaths, and three members of the Court who dissented from the order voiced their concerns that post-*Smith* cases, specifically *McCready* and *Reid*, applied strict scrutiny under the compelling state interest test to religious freedom challenges under Const 1963, art 1, § 4, relative to religion-neutral laws that were generally applicable, yet failed to explain the basis for imposing a greater burden. We do note that under Michigan and federal constitutional analysis, strict scrutiny is applicable in hybrid cases, i.e., cases in which a free exercise claim is made in conjunction with other constitutional protections such as freedom of speech, freedom of the press, or the right of parents to direct the education of their children, even where the challenged law is generally applicable and religion-neutral. *Smith, supra* at 881; *People v DeJonge (After Remand)*, 442 Mich 266, 279; 501 NW2d 127 (1993).

disputed that plaintiff's genuine beliefs and the actions taken by him in furtherance of those beliefs are religious in nature, arising from his interpretation of the Book of Revelation contained in the New Testament. Therefore, the first two elements of the test are satisfied. On the issue concerning whether the social security number requirement of MCL 257.307(1)(a) burdens the exercise of plaintiff's religious beliefs, plaintiff contends that the statute forces him to choose between abandoning his religious convictions so that he can operate a vehicle, a privilege enjoyed by others, and staying faithful to his beliefs while forgoing a driver's license. Given the fact that we dispose of plaintiff's claim under the remaining elements of the compelling state interest test, we decline to make a specific finding regarding whether the exercise of plaintiff's religious beliefs was truly burdened by the application of MCL 257.307(1)(a).

Next, we must ascertain whether a compelling state interest justifies the presumed burden imposed on plaintiff's religious beliefs and related conduct. Because ultimately federal law, the CSEPA, is incorporated by reference into MCL 257.307(1)(a) and a governmental interest, whether state or federal, is at stake, we deem it appropriate to examine the purpose behind the federal law in determining whether a compelling state interest exists. 42 USC 651 provides:

> For the purpose of enforcing the support obligations owed by noncustodial parents to their children and the spouse (or former spouse) with whom such children are living, locating noncustodial parents, establishing paternity, obtaining child and spousal support, and assuring that assistance in obtaining support will be available under this part to all children (whether or not eligible for assistance under a state program funded under part A of this subchapter) for whom such assistance is requested,

there is hereby authorized to be appropriated for each fiscal year a sum sufficient to carry out the purposes of this part.

Consistent with caselaw issued by courts across this country, including Michigan, there is a strong and compelling state interest in preserving and promoting the welfare of children relative to their financial health, which affects their overall well-being, by means of child support legislation, including enactments providing for court filiation and support orders, support enforcement and collection mechanisms, and other provisions securing the support of children. *Prince v Massachusetts*, 321 US 158, 168; 64 S Ct 438; 88 L Ed 645 (1944) ("A democratic society rests, for its continuance, upon the healthy, well-rounded growth of young people into full maturity as citizens, with all that implies. It may secure this against impeding restraints and dangers, within a broad range of selection."); *Crego v Coleman*, 463 Mich 248, 273; 615 NW2d 218 (2000) ("Providing financial support for children is a permissible, important, and even compelling governmental interest."); *Torres v Kunze*, 106 Conn App 802, 810; 945 A2d 472 (2008) (one cannot imagine a more compelling state interest than the support of children); *In re Marriage of Paredes*, 371 Ill App 3d 647, 653; 863 NE2d 788 (2007) (" '[I]t is difficult to imagine a more compelling State interest than the support of children.' " [Citation omitted.]); *In re Marriage of Didier*, 134 Wash App 490, 499; 140 P3d 607 (2006) (neutral and generally applicable support laws "embody the state's compelling interest of seeing that parents provide for their children"); *Hur v Virginia Dep't of Social Services Div of Child Support Enforcement*, 13 Va App 54, 58; 409 SE2d 454 (1991) ("[D]uty of support to . . . children is necessarily related to the compelling governmental interest of preserving the

welfare of children").[6]

Stated in more narrowly defined terms, the government has a compelling interest in the establishment of paternity, the tracking and locating of parents legally obligated to pay child support, the enforcement of support obligations, and the collection of support pay-

---

[6] We reject defendant's argument that Michigan also has a compelling state interest in obtaining federal funding made available only if the state complies with the CSEPA. See 42 USC 655 (funds for operating costs), 42 USC 658a (incentive payments), 42 USC 669b (monies for access and visitation programs), and 42 USC 601 *et seq.* (grant monies for needy family programs). While Michigan certainly has an interest in obtaining federal funds, which may even be a fiscal necessity, we are not prepared to rule that the interest is compelling in the context of the analysis concerning constitutional rights. It would indeed be troubling to conclude that Michigan can, without state constitutional ramifications, effectively burden a citizen's free exercise of religion, or any constitutional right, if sufficient monies are thrown in its direction by the federal government. We are in agreement with the assessment made by the United States Court of Appeals for the Tenth Circuit in *United States v Hardman*, 297 F3d 1116, 1127 (CA 10, 2002), that "a desire for federal funds is not a compelling interest." See also *Church on the Rock v City of Albuquerque*, 84 F3d 1273, 1280 (CA 10, 1996) (fact that city policy prohibiting use of public senior centers as places for religious worship was designed to comply with federal laws conditioning federal funding on compliance does not shelter policy from constitutional scrutiny as a city or state's wish for federal funds does not constitute a compelling state interest).

We also reject defendant's reliance on the REAL ID Act of 2005 (RIA), PL 109-13, 119 Stat 302, for purposes of identifying a compelling state interest. "The [RIA] requires that federal agencies accept only state-issued driver's licenses and identification cards that meet stringent information requirements." *In re Request for Advisory Opinion Regarding Constitutionality of 2005 PA 71*, 479 Mich 1, 10 n 11; 740 NW2d 444 (2007). The relevant language in MCL 257.307(1)(a) regarding social security numbers was not enacted in furtherance of the RIA. Even though the RIA had already been enacted by Congress when plaintiff was seeking renewal of his driver's license, Michigan has not yet implemented the act through legislation, having been granted an extension for compliance, so it cannot be said that defendant required plaintiff to report his social security number in order to serve the purposes and goals of the RIA. Therefore, we decline to consider the RIA in our analysis.

ments, and doing so in timely fashion, along with otherwise having in place a data-collection mechanism and network to assist in locating individuals, establishing paternity, and enforcing support obligations with respect to future births and parental responsibilities. The CSEPA's requirement that driver's license applicants furnish their social security numbers, as incorporated by MCL 257.307(1)(a), greatly assists in promoting these interests, and thus helps to successfully accomplish the broad compelling interest or goal of providing for the welfare of children because a social security number can be used as an important and practical tool to collect necessary information and data for support and paternity purposes. A social security number is a unique federal identifier that can be effectively used to locate absent parents and withhold wages, all in the name of supporting children. See *Michigan Dep't of State v United States*, 166 F Supp 2d 1228, 1231-1233 (WD Mich, 2001) (Congress, demonstrating a strong public policy for using a federal identifier, intended to create and have in place a rapid response and automated mechanism to locate absent parents, withhold wages, and otherwise collect support through use of and reference to social security numbers drawn from license applications and entered into databases); *McDonald v Alabama Dep't of Pub Safety*, 756 So 2d 880, 881-882 (Ala Civ App, 1999) (importance of social security numbers as unique identifiers is not in doubt).

Finally, we must determine whether there is a less obtrusive or restrictive means available to the state by which to promote its compelling interests such that plaintiff's religious objections can be accommodated.

We conclude that there are no less restrictive or obtrusive means available to promote the compelling

state interests at stake here and that the reporting of social security numbers on license applications is essential to accomplishing these interests. Granting exemptions for plaintiff and other religious objectors would defeat the goals and interests sought to be promoted by the legislation.

Plaintiff argues that the interests could be promoted by simply waiting until he has a child and is involved in divorce or paternity proceedings before collecting the information, instead of demanding that he and all license applicants furnish their social security numbers despite religious objections.[7] The first problem with this argument is that plaintiff himself suggested that he would not be compliant with the requirement to report his social security number even in divorce or paternity proceedings. Second, there is absolutely no guarantee that any person who has conceived a child would actually become involved in family court proceedings such that a social security number could be reported, either because of a purposeful attempt to evade court process or because the parent, without intent to evade process, cannot be located, possibly having no knowledge of the child. Indeed, the social security number, if previously procured from a license application, could be used to locate a parent under those circumstances and subject them to court process. Finally, we have contem-

---

[7] Plaintiff asserted at oral argument that he does not have any children. We also note that plaintiff claimed to have never reported his social security number to defendant because, before the renewal application at issue here, such requirement was not in place when he last renewed his license. Consistently with this statement, counsel for defendant noted at argument that had plaintiff previously reported his social security number to defendant, the number would have been preprinted on the renewal application, which was not the case. 1998 PA 330 added the statutory language at issue relative to furnishing social security numbers.

plated the feasibility of allowing a religious exemption for someone who has no children because the compelling interest to support children would not appear to be at risk if a license applicant has no offspring; however, that appearance would be deceiving. Defendant would have the onerous task of confirming whether a religious objector has children, let alone dealing with the issue whether a religious belief is genuine, and some license applicants could intentionally be deceptive on the issue, or male applicants might simply not be aware of their parental status. But more importantly, much can transpire during the period between license renewals such that a license applicant can become a parent after renewing his or her license, leaving no social security number on file with defendant if a religious exemption were granted. And if a person in that situation did not participate in later paternity or divorce proceedings and could not be located, support enforcement and collection could be problematic. As we stated above, one of the state interests is having in place a data-collection mechanism and network, a type of safety net if you will, to assist in locating individuals, establishing paternity, and enforcing support obligations with respect to future births and parental responsibilities. This was clearly considered by Congress because 42 USC 666(a)(13)(B) already requires parents to furnish social security numbers in divorce, support, and paternity proceedings. So to craft a safety net or data-collection mechanism and network for children who will be born in the future, as well as to protect existing children whose parents' whereabouts could become unknown at a later date or whose parents fail to participate in family court proceedings, Congress additionally required license applicants to furnish their social security numbers. 42 USC 666(a)(13)(A).

Plaintiff's religious beliefs conflict with any type of national identifier that could be used to assist in locating a parent, establishing paternity, enforcing support obligations, and collecting support. Furthermore, there is no other identifier or mechanism cited by plaintiff that could be used to promote the compelling state interests, much less one that would be as efficient in promoting those interests as a social security number. Granting a religious exemption to plaintiff and others similarly situated would substantially impair the state's interests because the goals of, and interests secured by, the social security number requirement simply cannot be promoted without the reporting of a social security number. Defendant has shown that there are no viable, acceptable alternative means that can be used to promote the compelling state interests.[8]

We acknowledge that granting one person a religious exemption, when viewed in comparison with the great multitude of license applicants who will report their social security numbers, will not cause the downfall of paternity and child support programs, sending them into chaos and turmoil. But the compelling state interest test should not succeed or fail on the basis of the number of people seeking an exemption, as viewed as a percentage of the total population. If that were the case,

---

[8] We note that virtually every jurisdiction that has addressed a claim that furnishing one's social security number violates religious free exercise rights has rejected the argument. Anno: *Free exercise of religion as applied to individual's objection to obtaining or disclosing social security number*, 93 ALR5th 1, § 2[a]; *Miller v Reed*, 176 F3d 1202, 1206-1207 (CA 9, 1999); *Kasler v Howard*, 323 F Supp 2d 675, 680 (WD NC, 2003); *Stoianoff v Comm'r of Motor Vehicles*, 107 F Supp 2d 439, 449-450 (SD NY, 2000); *Mefford v White*, 331 Ill App 3d 167, 174-178; 770 NE2d 1251 (2002); *Kocher v Bickley*, 722 A2d 756, 761-762 (Pa Commonwealth, 1999); *McDonald, supra* at 885-886; *State v Loudon*, 857 SW2d 878, 882-883 (Tenn Crim App, 1993); *Terpstra v State*, 529 NE2d 839, 843-847 (Ind App, 1988); *Penner v King*, 695 SW2d 887, 890 (Mo, 1985).

the test would essentially be rendered meaningless and would rarely, if ever, be satisfied, given that, as stated by the Supreme Court in *People v DeJonge (After Remand)*, 442 Mich 266, 282; 501 NW2d 127 (1993), the "major benefactors [of free exercise rights] are religious *minorities or dissidents* whose beliefs and worship are suppressed or shunned by the *majority*." (Emphasis added.) Furthermore, granting the requested religious accommodation and otherwise allowing religious exemptions would compromise the government's ability to administer the support enforcement programs by creating information gaps in the network and databases,[9] and thus there is a compelling interest in the *uniform application* of the social security number requirement to license applicants. See *Gonzales v O Centro Espirita Beneficente Uniao do Vegetal*, 546 US 418, 435; 126 S Ct 1211; 163 L Ed 2d 1017 (2006) (claimed exemption can be denied when the state demonstrates a compelling interest in the uniform application of a particular program by showing that granting the requested religious exemption would compromise the government's ability to administer the program).

The fact that some license applicants need not furnish social security numbers, because federal law does not require them to have a social security number in the first place, does not demand that we recognize an exemption for plaintiff; he has a social security number, and there are no less restrictive or obtrusive means to promote the compelling state interests cited above.

---

[9] The CSEPA, particularly 42 USC 654a(a), provides that

[i]n order for a State to meet the requirements of this section, the State agency administering the State program under this part shall have in operation a single statewide automated data processing and information retrieval system which has the capability to perform the tasks specified in this section with the frequency and in the manner required by or under this part.

Accordingly, the religious-conviction exemption formerly found in MCL 257.307(13) does not provide relief to plaintiff under a theory based on Const 1963, art 1, § 4, nor does the constitutional provision, standing alone, entitle plaintiff to relief.

Next, plaintiff argues that defendant's actions violated his right to equal protection under Const 1963, art 1, § 2, which provides:

> No person shall be denied the equal protection of the laws; nor shall any person be denied the enjoyment of his civil or political rights or be discriminated against in the exercise thereof because of religion, race, color or national origin. The legislature shall implement this section by appropriate legislation.

The essence of plaintiff's argument is that he is not provided the same exemption as persons who do not have to report social security numbers because they do not have them. He claims that they are allowed to obtain a driver's license and he is not, unless he sacrifices his fundamental right to freely worship.

In *Brinkley v Brinkley*, 277 Mich App 23, 35; 742 NW2d 629 (2007), this Court, addressing an equal protection claim, stated:

> Both the federal and state constitutions provide that no person will be denied the equal protection of the law. The federal and state constitutional guarantees of equal protection are coextensive. *The constitutional guarantee of equal protection ensures that people similarly situated will be treated alike, but it does not guarantee that people in different circumstances will be treated the same.* [Citations omitted; emphasis added.]

See also *Morales v Parole Bd*, 260 Mich App 29, 49; 676 NW2d 221 (2003); *Wysocki v Felt*, 248 Mich App 346, 367; 639 NW2d 572 (2001).

"[E]qual protection does not require the same treatment be given those that are not similarly situated." *Alspaugh v Comm on Law Enforcement Standards*, 246 Mich App 547, 555; 634 NW2d 161 (2001).

Here, plaintiff, or anyone claiming that he or she need not report an existing social security number on a license application, is not similarly situated in relation to a person who does not have a social security number. Individuals who are exempt by law from obtaining a social security number cannot, of course, furnish a number that has never been given to them. In *Florida State Conference of the Nat'l Ass'n for the Advancement of Colored People v Browning (On Remand)*, 569 F Supp 2d 1237 (ND Fla, 2008), there was an equal protection challenge to a voter registration statute that required applicants who did not have driver's licenses to provide the last four digits of their social security numbers, even though applicants who did hold driver's licenses were not also required to provide the last four digits of their social security numbers. The federal district court, after first noting that equal protection only requires that states treat similarly situated people alike, ruled that "[b]ecause they have no driver's license, such applicants are not similarly situated with applicants who can provide a driver's license number." *Id.* at 1257.

Accordingly, we hold that plaintiff's equal protection claim fails.

Plaintiff next argues that it is unconstitutional for the state of Michigan to enter into a contract with the United States pursuant to the CSEPA if it results in a violation of federal and state constitutional rights. Plaintiff's argument relies on the Tenth Amendment of the United States Constitution, the Spending Clause, Const 1963, art 1, § 4, and *South Dakota v Dole*, 483 US 203; 107 S Ct 2793; 97 L Ed 2d 171 (1987). The Tenth

Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." The Spending Clause provides that "[t]he Congress shall have the Power To lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States." US Const, ·art I, § 8. In *Dole, supra* at 206-208, the United States Supreme Court, addressing the power of Congress under the Spending Clause, stated:

> Incident to this power, Congress may attach conditions on the receipt of federal funds, and has repeatedly employed the power "to further broad policy objectives by conditioning receipt of federal moneys upon compliance by the recipient with federal statutory and administrative directives."

> * * *

> The spending power is of course not unlimited, but is instead subject to several general restrictions articulated in our cases. The first of these limitations is derived from the language of the Constitution itself: the exercise of the spending power must be in pursuit of "the general welfare." In considering whether a particular expenditure is intended to serve general public purposes, courts should defer substantially to the judgment of Congress. Second, we have required that if Congress desires to condition the States' receipt of federal funds, it "must do so unambiguously . . . , enabl[ing] the States to exercise their choice knowingly, cognizant of the consequences of their participation." Third, our cases have suggested (without significant elaboration) that conditions on federal grants might be illegitimate if they are unrelated "to the federal interest in particular national projects or programs." Finally, we have noted that other constitutional provisions may pro-

vide an independent bar to the conditional grant of federal funds. [Citations omitted; alteration and internal omission in original.][10]

Plaintiff's argument focuses solely on the fourth restriction or limitation on Congress's spending power ("independent constitutional bar" limitation), claiming that the Tenth Amendment and Const 1963, art 1, § 4, are offended by Michigan's participation in the CSEPA. In *Dole*, the state of South Dakota brought an action that challenged the constitutionality of a federal act that conditioned receipt by states of federal highway funds on the adoption of a minimum drinking age of 21 years. The Court, explaining the nature of the "independent constitutional bar" limitation and the relevant cases, stated:

These cases establish that the "independent constitutional bar" limitation on the spending power is not, as petitioner suggests, a prohibition on the indirect achievement of objectives which Congress is not empowered to achieve directly. Instead, we think that the language in our earlier opinions stands for the unexceptionable proposition that the power may not be used to induce the States to engage in activities that would themselves be unconstitutional. Thus, for example, a grant of federal funds conditioned on invidiously discriminatory state action or the infliction of cruel and unusual punishment would be an illegitimate exercise of the Congress' broad spending power. But no such claim can be or is made here. Were South Dakota to succumb to the blandishments offered by Congress and raise its drinking age to 21, the State's action

---

[10] The *Dole* Court also indicated that "in some circumstances the financial inducement offered by Congress might be so coercive as to pass the point at which 'pressure turns into compulsion.' " *Dole, supra* at 211. Plaintiff, while acknowledging this language, does not present an argument that the state of Michigan was effectively coerced into complying with the CSEPA.

in so doing would not violate the constitutional rights of anyone. [*Dole, supra* at 210-211.]

The enactment of the CSEPA by Congress under the Spending Clause, and specifically in relation to the requirement that a driver's license applicant furnish his or her social security number, 42 USC 666(a)(13)(A), did not induce the state of Michigan to engage in unconstitutional activities relative to the free exercise of religion, given that MCL 257.307(1)(a), as applied to plaintiff and on its face, does not violate Const 1963, art 1, § 4, pursuant to our analysis above.

With respect to the Tenth Amendment, the *Dole* Court, rejecting the same argument proffered by plaintiff here, ruled:

We have also held that a perceived Tenth Amendment limitation on congressional regulation of state affairs did not concomitantly limit the range of conditions legitimately placed on federal grants. In *Oklahoma v Civil Service Comm'n*, 330 U.S. 127; 67 S. Ct. 544; 91 L. Ed. 2d 794 (1947), the Court considered the validity of the Hatch Act insofar as it was applied to political activities of state officials whose employment was financed in whole or in part with federal funds. The State contended that an order under this provision to withhold certain federal funds unless a state official was removed invaded its sovereignty in violation of the Tenth Amendment. Though finding that "the United States is not concerned with, and has no power to regulate, local political activities as such of state officials," the Court nevertheless held that the Federal Government "does have power to fix the terms upon which its money allotments to states shall be disbursed." The Court found no violation of the State's sovereignty because the State could, and did, adopt "the 'simple expedient' of not yielding to what she urges is federal coercion. The offer of benefits to a state by the United States dependent upon cooperation by the state with federal plans, assumedly for the general welfare, is not unusual." [*Dole, supra* at 210 (citations omitted).]

Moreover, in *Kansas v United States*, 214 F3d 1196 (CA 10, 2000), the United States Court of Appeals for the Tenth Circuit, citing *Dole* in support, rejected a similar constitutional challenge to the CSEPA under the Spending Clause. See also *Michigan Dep't of State, supra* at 1233-1234.

Accordingly, we reject plaintiff's argument that Michigan's participation under the CSEPA constitutes an unconstitutional state-federal contract.

As a matter of law, plaintiff failed to establish a violation of his statutory rights under former MCL 257.307(13) of the Michigan Vehicle Code, failed to establish a violation of his religious rights under Const 1963, art 1, § 4, failed to establish a violation of his equal protection rights under Const 1963, art 1, § 2, and failed to establish an unconstitutional state-federal contract under the Spending Clause or the Tenth Amendment.

Affirmed.