# STATE OF MICHIGAN

# COURT OF APPEALS

POLICE & FIRE RETIREMENT SYSTEM OF
THE CITY OF DETROIT,

       Plaintiff-Appellee,

v

MICHAEL ABRAHAM LEIBOWITZ,

       Defendant-Appellant.

UNPUBLISHED
February 14, 2017

No. 329048
Wayne Circuit Court
LC No. 12-014242-CK

Before: STEPHENS, P.J., and SERVITTO and SHAPIRO, JJ.

PER CURIAM.

Defendant appeals as of right the trial court's order granting plaintiff's motion for summary disposition pursuant to MCR 2.116(C)(10), and awarding plaintiff judgment against defendant in the amount of $10,131,250. The trial court ruled that plaintiff was entitled to pierce the corporate veil and hold defendant personally liable for a judgment debt owed to plaintiff by Invescor, Ltd. ("Invescor"), a company for which defendant was the president, chief executive officer (CEO), and sole shareholder. We reverse and remand to the trial court for further proceedings.

## I. FACTS AND PROCEEDINGS

Defendant is the former sole shareholder of the now-defunct corporation, Invescor. Invescor's primary business was brokering "life settlement" transactions, in which the owner and insured of a life insurance policy would sell the policy to an investor (known as a "provider"), who would then pay the policy's premiums in exchange for the policy's death benefit. In 2008, defendant and plaintiff negotiated a loan agreement whereby plaintiff agreed to provide a loan investment to Invescor in the amount of $10,000,000 for purposes of expanding Invescor's business. In 2010, Invescor defaulted on the loan and plaintiff brought an action against Invescor for breach of contract. In the course of discovery, plaintiff learned that Invescor had transferred substantial sums of monies to defendant, purportedly in repayment of a loan that defendant had made to Invescor before plaintiff's involvement. Plaintiff also discovered that defendant charged substantial personal expenses to Invescor's corporate credit account. Plaintiff added defendant as an individual party-defendant to this prior action.

Invescor did not plead or respond in the prior action, and the trial court entered a default judgment against Invescor and in favor of plaintiff in the amount of $10,131,250, for the unpaid

-1-

principal and interest owed by Invescor to plaintiff. The parties later stipulated to dismiss the prior action as to defendant, without prejudice, and plaintiff was permitted to refile an action against defendant.

Plaintiff then brought this action against defendant, stating a single count labeled as Breach of Contract – Piercing the Corporate Veil. Plaintiff alleged that defendant should be held personally liable for Invescor's judgment debt because defendant did not regard Invescor as a corporate entity distinct from defendant, and instead used Invescor as a mere instrumentality to transfer substantial amounts of cash, including funds provided by plaintiff, to himself under the guise of repaying himself for his loans of personal funds to Invescor. Plaintiff also alleged that defendant deceived plaintiff regarding Invescor's true financial status through deceptive accrual-based accounting practices, in violation of generally accepted accounting principles (GAAP). Specifically, plaintiff alleged that Invescor's financial statements represented applications to sell life insurance policies to providers as inventory or accounts receivable, although these policies were not yet sold. Invescor categorized these policies according to the stage of the transaction, increasing the value as it came closer to a final sale. It adjusted the value of these assets to reflect that some policies would not sell, and it then would not receive a commission on the sale. Plaintiff contended that these were "phantom assets" that falsely portrayed Invescor as a profitable company.

Plaintiff moved for summary disposition under MCR 2.116(C)(10). Plaintiff argued that the financial documents it obtained from Invescor during the prior action revealed defendant's fraudulent accounting and self-enrichment from Invescor's assets. In response, defendant blamed the 2008 financial crisis for Invescor's failure. He asserted that the seizure of the credit markets prevented providers from obtaining funds to buy life settlements. Defendant argued that summary disposition was not warranted because there remained genuine issues of material fact. He acknowledged that he sometimes charged personal expenses to his business account, and sometimes charged business expenses to his personal account, but offered his own and Invescor's employees' deposition testimony that he had instructed employees to adjust and reconcile his business accounts and personal note to Invescor to account for the charges. Defendant also argued that his listing of unsold policies was a legitimate procedure, which was required by LaSalle Bank when it previously made a loan to Invescor. Defendant further asserted that the financial documents provided to plaintiff during its due diligence investigation of Invescor disclosed the accounting procedure. Defendant also offered evidence that the money he received from Invescor was considerably lower than the substantial sums of his own money that he put into Invescor in an attempt to weather the financial crisis.

The trial court concluded that there was no issue of material fact that defendant used Invescor as a "mere instrumentality" or alter ego. The court rejected defendant's assertion that he lost more money than he gained from his dealings with Invescor. In support of this conclusion, the court relied on plaintiff's Exhibit UU, a document pertaining to defendant's finances, which indicated that he owed "hundreds of thousands of dollars" to Invescor. The trial court did not address plaintiff's allegations concerning "phantom assets," but concluded that plaintiff would not have made the loan to Invescor if it had been aware of its true financial state.

## II. PIERCING THE CORPORATE VEIL

This Court reviews a motion for summary disposition de novo. Summary disposition may be granted under MCR 2.116(C)(10) when "there is no genuine issue as to any material fact and the moving party is entitled to judgment . . . as a matter of law." This Court must consider any evidence submitted by the parties and view that evidence in the light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. *Maiden v Rozwood,* 461 Mich 109, 118-120; 597 NW2d 817 (1999). A genuine issue of material fact exists when the record leaves open "an issue upon which reasonable minds might differ." *Debano–Griffin v Lake Co,* 493 Mich 167, 175; 828 NW2d 634 (2013) (quotation omitted). A trial court's decision whether to pierce the corporate veil is reviewed de novo "because of the equitable nature of the remedy." *Foodland Distrib v Al–Naimi,* 220 Mich App 453, 456; 559 NW2d 379 (1996).

"Michigan courts typically consider corporations legally distinct from their shareholders, even if a single shareholder owns all the stock." *Dep't of Consumer & Indus Servs v Shah,* 236 Mich App 381, 393; 600 NW2d 406 (1999); *Lakeview Commons v Empower Yourself,* 290 Mich App 503, 509; 802 NW2d 712 (2010) ("the law treats a corporation as an entirely separate entity from its stockholders, even where one person owns all the corporation's stock."). "However, when this fiction is invoked to subvert justice, it may be ignored by the courts." *Foodland Distrib,* 220 Mich App at 456. Generally, a court is warranted in disregarding the separate existence of a corporation where (1) the corporate entity is a mere instrumentality of another individual or entity, (2) the entity was used to commit a wrong or fraud, and (3) there is an unjust injury or loss to the plaintiff. *Rymal v Baergen,* 262 Mich App 274, 293-294; 686 NW2d 241 (2004). "There is no single rule delineating when a corporate entity should be disregarded, and the facts are to be assessed in light of a corporation's economic justification to determine if the corporate form has been abused." *Id.* at 294. In *Glenn v TPI Petroleum, Inc,* 305 Mich App 698, 716; 854 NW2d 509 (2014), this Court observed:

> Factors used by courts to determine the propriety of piercing the corporate veil include: (1) whether the corporation is undercapitalized, (2) whether separate books are kept, (3) whether there are separate finances for the corporation, (4) whether the corporation is used for fraud or illegality, (5) whether corporate formalities have been followed, and (6) whether the corporation is a sham. *Laborers' Pension Trust Fund v Sidney Weinberger Homes, Inc,* 872 F2d 702, 704-705 (CA 6, 1988).

## A. MERE INSTRUMENTALITY

Defendant denies that he used Invescor as a mere instrumentality for himself. He acknowledges that he sometimes charged personal expenses to corporate accounts, and sometimes used personal funds for business expenses, but he presented evidence that it was his practice to reconcile these charges to associate them with the proper accounts to maintain Invescor's status as a separate entity. Plaintiff relies on unpublished decisions in which courts found that evidence of an individual party's comingling of corporate and personal funds supported an action to pierce the corporate veil, and that evidence of practices of reconciling

personal and business expenses were insufficient to defeat a plaintiff's attempt to pierce the corporate veil.[1] The cases cited by plaintiff merely establish that evidence of an individual party's comingling of corporate and personal funds can provide factual support for a plaintiff's claim that the corporation was used as a mere instrumentality by the individual party. However, they do not hold as a matter of law that evidence of such comingling of funds compels a finding that the corporate entity was used as a mere instrumentality of the individual party, or that evidence of practices by corporate and individual parties to reconcile personal and business charges by posting them to their proper accounts is irrelevant or cannot be considered in determining whether an individual party used a corporate entity as a mere instrumentality. The cases reinforce that where there are allegations that corporate funds were used to pay personal expenses, the question whether the corporation was used as the individual party's mere instrumentality remains a question of fact.

We note that in two of the cases cited by plaintiff, the trial court decided the matter after conducting a bench trial, and the trial court was permitted to weigh all of the evidence and make findings on disputed issues of fact, which the appellate courts were then required to review for clear error. *Teran v Rittley,* 313 Mich App 197, 213; 882 NW2d 181 (2015). In contrast, in the present case the issue was presented in the context of a motion for summary disposition, and the trial court was not permitted to make findings of fact, but rather was required to view the evidence in a light most favorable to defendant to determine whether the evidence established a genuine issue of material fact. *Maiden,* 461 Mich at 118-120. Further, the trial court's decision is not accorded any particular deference, but rather is reviewed de novo. *Id.* In another unpublished case cited by plaintiff, the trial court decided the matter in the context of a motion for summary judgment, but the trial court found no factual support for the defendants' assertion that corporate funds were used to pay only directly incurred business expenses. In the instant case, defendant offered the deposition testimony of himself and other witnesses to support his claim that adjustments to Invescor's accounts were regularly made whenever personal expenses were charged to corporate accounts, and thus that corporate funds were not ultimately used to pay defendant's personal expenses. This evidence established a question of fact with respect to commingling of funds for purposes of determining whether defendant treated Invescor as an alter ego rather than a separate entity.

The trial court rejected defendant's assertion that his losses in loans to Invescor were greater than the transfers of monies from Invescor to himself. The trial court relied on plaintiff's Exhibit UU to support its finding that the evidence "shows that [defendant] owed Invescor hundreds of thousands of dollars as of December 31, 2009." Plaintiff's Exhibit UU consists of a one-page document entitled "Mike Leibowitz Balance Sheet As of December 31, 2009." Plaintiff cited this document in support of its statement that "according to [defendant's] personal financial records, he owes Invescor $781,000." In this document, under the heading "ASSETS" and the subheading "Other Assets," are the items (1) "Invescor LTD-Note Receivable," with a

---

[1] Although this Court's unpublished decisions are not precedentially binding, MCR 7.215(C)(1), they may be considered instructive or persuasive. *Paris Meadows, LLC v City of Kentwood*, 287 Mich App 136, 145 n 3; 783 NW2d 133 (2010).

corresponding amount of –$781,471.15; (2) "Invescor NB-Not Rec" with a corresponding amount of $5,785.13; (3) "Invescor Wholesale BD-Note Rec," with a corresponding amount of –$75,000, and (4) "Note Receivable MAL Capital," with a corresponding amount of $252,500. The sum of these figures is listed as "Total Other Assets," with a corresponding amount of –$598,186.02. Defendant argues that this document is not competent evidence because plaintiff did not explain where it came from, who prepared it, or the purpose for which it was prepared. Defendant also asserts that Invescor's financial records do not corroborate that he owed this debt to Invescor. Moreover, defendant asserts that Invescor's financial records do not corroborate that he owed this debt to Invescor. Defendant also indicates that the document's listing of negative figures as assets is a peculiarity that calls for explanation.

Defendant raises valid questions about the competency of plaintiff's Exhibit UU to prove his indebtedness to Invescor in comparison to the monies that he allegedly infused into Invescor in an attempt to survive the financial crisis. However, defendant did not contend below that the document was a fabrication or inauthentic in any respect. Defendant is in the best position to know whether this document is an authentic copy of a document he provided to plaintiff, or a document compiled from data plaintiff received in discovery. If it was produced in discovery, defendant is also in the best position to interpret the document. Defendant neither challenged the document's authenticity, nor offered an alternative explanation. The trial court did not acknowledge the questions surrounding plaintiff's Exhibit UU, but merely cited it in support of its conclusion that defendant was heavily in debt to Invescor. Under these circumstances, we conclude that plaintiff's Exhibit UU does not preclude a question of fact related to the dispute of whether defendant took more or less money out of Invescor than he put into it.

Plaintiff emphasizes that there were no formal loan agreements between defendant and Invescor, or between Invescor and the family members and business associates of defendant who received payments from Invescor. Although the timing of plaintiff's transfers of funds to Invescor and Invescor's transfers to defendant is suspicious, defendant offered sufficient evidence to establish a question of fact regarding the legitimacy of defendant's dealings with Invescor, and whether they prove that defendant used Invescor as a mere instrumentality.

In sum, because defendant's evidence establishes the existence of genuine issues of material fact regarding whether defendant used Invescor as a mere instrumentality, the trial court erred in granting plaintiff's motion for summary disposition on its claim to pierce the corporate veil.

## B. COMMISSION OF A WRONG OR FRAUD ON PLAINTIFF

Defendant argues that the trial court also erred in finding that he used Invescor's allegedly false corporate distinction to commit a wrong against plaintiff. Defendant contends that Invescor's failure to pay a debt is insufficient to support the second element of piercing the corporate veil. We disagree.

The trial court cited *Tredit Tire & Wheel Co, Inc v Regency Conversions, LLC*, 636 F Supp 2d 598 (ED Mich, 2009), in support of its conclusion that Invescor's breach of its contract with plaintiff was sufficient to establish a sufficient wrong against plaintiff. While we note that *Tredit* is not binding, because the Court's decision was largely based on its reasoning, we will

review its analysis. In *Tredit*, the plaintiff in a breach of contract action against the defendant, Regency Conversions, sought to pierce the corporate veil to reach assets held by the defendant, WB Automotive Holdings ("WBAH"). WBAH moved for summary judgment for failure to state a claim on which relief can be granted. *Id*. at 600-601. Applying Michigan law, the federal court concluded that the plaintiff "alleged facts which, if proven, would permit the conclusion that Regency became a mere instrumentality of WBAH." *Id*. at 602. The court also held that the plaintiff's allegations satisfied the "fraud or wrong" element by alleging that the defendants breached the contract. The court held that breach of contract is sufficient to satisfy this element, regardless of whether the parent company perpetrated an actual fraud. *Id*., citing *Herman v Mobile Homes Corp*, 317 Mich 233; 26 NW2d 757 (1947).

We disagree with defendant's argument that *Tredit* is distinguishable from the instant case because *Tredit* concerned a motion for summary judgment for failure to state claim on which relief can be granted. This procedural distinction is not material to the legal holding in *Tredit* that a corporate party's breach of contract is legally sufficient to constitute the wrongful act necessary to establish the second requirement of piercing the corporate veil. Thus, the evidence that Invescor breached its loan agreement with plaintiff is sufficient to support the existence of a legally sufficient wrong necessary to establish the second element of piercing the corporate veil. Defendant did not offer any evidence to show that Invescor did not breach its contract with plaintiff, and thus failed to demonstrate a genuine issue of material fact regarding this element.

We reject defendant's argument that the evidence fails to establish the second element because it was Invescor, not himself, who committed the breach of contract. This argument is misplaced because the pertinent inquiry is whether the entity was used to commit a wrong or fraud. *Rymal*, 262 Mich App at 293-294. In *Green v Ziegelman*, 310 Mich App 436, 458; 873 NW2d 794 (2015), this Court stated:

> The court . . . must determine whether the manner of use effected a fraud or wrong on the complainant. . . . In considering this element, it is not necessary to prove that the owner caused the entity to directly harm the complainant; it is sufficient that the owner exercised his or her control over the entity in such a manner as to wrong the complainant. . . . But it bears repeating that establishing an entity for the purpose of avoiding personal responsibility is not by itself a wrong that would warrant disregarding the entity's separate existence. [Citations omitted.]

Evidence that defendant manipulated Invescor in such a manner that Invescor was left without sufficient assets to meet its obligations to plaintiff would support a conclusion that the entity, Invescor, was used to commit a wrong. Thus, to the extent that plaintiff is able to prove that defendant used Invescor as a mere instrumentality, the second element of piercing the corporate veil, that defendant used his control over the entity to cause injury to plaintiff, would be established, given that there is no question of material fact that Invescor breached the loan agreements with plaintiff.

## C. UNJUST INJURY OR LOSS TO PLAINTIFF

-6-

Defendant also argues that he presented evidence to establish a genuine question of fact regarding the third element of piercing the corporate veil, that the plaintiff sustained an unfair loss or injury. *Rymal*, 262 Mich App at 293-294. Plaintiff argues that defendant's deceptive accounting practices, his misrepresentations about Invescor's financial condition, and his transfers of Invescor's assets to himself and his associates, are sufficient to show that it sustained an unjust loss as opposed to a failed investment. Defendant points out that plaintiff did not plead a claim of fraudulent misrepresentation, but a claim for piercing the corporate veil does not require the plaintiff to plead a separate tort against the individual defendant. The pertinent inquiry is whether the individual defendant abused the corporate status to cause harm to the plaintiff. *Foodland Distrib*, 220 Mich App at 456. Accordingly, evidence that defendant used deception to induce plaintiff to invest in Invescor may satisfy the third element.

Plaintiff contends that it was unjustly injured because defendant used deceptive accounting practices to conceal Invescor's true financial state and falsely present incomplete and potential transactions as assets with actual value. Defendant denies using deceptive accounting practices and contends that Invescor's procedures for listing potential life settlements as assets according to the stage of the transaction did not violate GAAP, and that the nature of these assets were disclosed to plaintiff in the documents that defendant produced for plaintiff's due diligence consultants. The trial court did not address the parties' arguments about recording incomplete transactions as assets, but found generally that plaintiff would not have entered into the loan agreement with Invescor if it had known the true condition of Invescor's finances.

Plaintiff argues that the inclusion of unsold policies as inventory or accounts receivable inflated the value of Invescor as determined from the 2006 and 2007 balance sheets that plaintiff received before entering into the loan transactions with Invescor. Plaintiff contends that it did not have sufficient materials to understand the nature of these "phantom assets" until the prior lawsuit, when plaintiff was able to review Invescor's finances according to cash-based rather than accrual-based accounting. Defendant justifies his accounting method as suitable for the life settlement industry. He emphasizes that before the policies were sold, they were an asset adding value to Invescor because Invescor obtained the exclusive right to sell those policies.

The 2007 balance sheet listed three items under the "Current Assets" heading: (1) cash in banks ($55,606), (2) accounts receivable – life insurance ($59,160), and (3) accounts receivable – life settlement ($6,476,361). The 2007 balance sheet is accompanied by a document entitled, "Note 1: Nature of Operations and Accounting Methods," which stated:

> Life Settlement: The Company records accounts receivable on a 5 stage basis, stage 1 through 3 being less collectable than stage 4 and 5. Attached are the calculations for the various stages which includes [sic] an allowance for doubtful accounts.

The 2007 balance sheet also has an attachment entitled "Accounts receivable detail," which listed these amounts:

| | |
|---|---|
| Application Stage Rec (1,2,3) | $2,632,000.00 |
| Application Stage Reserve | $ (840,000.00) |

| | |
|---|---|
| Offer Stage Rec (4) | $2,827,616.72 |
| Offer Stage Reserve | $ (331,102.66) |
| Closing Stage (5) | $ 1,189,994.00 |
| Closing Stage Reserve | $ (3,147.39) |

Plaintiff does not indicate whether it received the attachments to the 2007 balance sheet, or whether this information could have alerted plaintiff to the problem with recording incomplete settlement transactions as assets.

Plaintiff asserts that defendant admitted in his testimony that no money changed hands during the early stages of the sale of the policies as life settlements. Defendant testified as follows:

*Q.* So for each application in stage 1, there is an actual sale of the life settlement policy?

*A.* No. A customer comes to us, asking us to sell their policy. Stage 1 is when we receive the file and we evaluate that it's viable for sale.

*Q.* So what is the transaction?

*A.* The customer has submitted to us an application for sale of his or her life insurance policy.

*Q.* And so is the sale made?

*A.* The sale would not be made until stage 5. . . .

No monies have transferred hands until stage 5.

Defendant stated that at stage one, "[t]here is no sale in the sense that the customer has given up ownership yet. They have put the product on the market for sale." Invescor did not "take ownership at any part of the process," but Invescor had "exclusivity on the sale." Defendant explained that once the file was submitted to Invescor, the client "has exclusively assigned it to us to send it out to bid for the highest price." Defendant explained that at stage one, the policy was "in the process of seeing if somebody wants to buy it, and we have already determined that the market would accept this policy." According to defendant, at this point there was not yet a buyer, "and that's one of the reasons we create the reserve." Invescor recorded the estimated commission. Defendant stated that estimating the value in this manner was acceptable under GAAP and in accrual-basis accounting.

Plaintiff maintains that defendant's "awaiting market" category on the financial statements was an especially egregious false representation. According to plaintiff, this category was entirely fictional, even when the reserve is taken into consideration. Defendant admitted in

his deposition that Invescor did not have ownership of policies that were placed in the "awaiting market" category. He stated:

> Awaiting market was a firm written bid by a provider stating that they would buy the capital—they were purchasing the policies as soon as their capital sources were funded. This was a change in the industry and that change was that their credit lines were disappearing and they were looking for new funding sources. They wanted to buy those policies, they gave us firm commitments to them. We had to put them in a different category because we did not have—they weren't going to buy them at stage 5 in 30 days. They asked us to await and hold that file for them."

The buyers of these policies represented that "they had funding coming through," but this did not take place. Although plaintiff contends that defendant and Invescor's accountant, Charles Kessler, knew that these accounting methodologies were invalid, the evidence that plaintiff cites in support of this contention does not reflect any recognition that the methods were deceptive or invalid. Kessler testified that this method was "pretty unique," and that defendant helped develop the method, but Kessler indicated that this method reflected the realities of the life settlement industry.

Defendant asserts that plaintiff's due diligence advisor, Adrian Anderson, obtained all the relevant documents pertaining to the inclusion of incomplete sales as assets. Anderson admitted in his deposition that he received the balance sheet with the attachment on the five stages:

> *Q*. Did you know at the time whether or not it was based on accrual or based on cash?

> *A*. The financial statements that were presented gave the appearance that the profits were cash.

> *Q*. No, no. Don't tell me if they gave an appearance. They also gave an appearance that one through five of the staging of the settlement insurance policies --

> *A*. We just--

> *Q*. Let me finish my question. You know that various stages of the settlement policy process were collectible versus less collectible, did you not?

> *A*. Yes.

> *Q*. And all of those terms in terms of the values of the policies in each stage one through five were contained on the balance sheet that you got, on the profit and loss?

> *A*. Yeah, we looked at the bottom line on the P and L as prepared by the CPA firm.

*Q*. Okay. Do you have any reason to believe that the information provided was fraudulent?

*A*. No.

*Q*. Do you have any reason to believe that the information provided was not true?

*A*. No.

*Q*. Do you have any reason to believe that anybody on behalf of Invescor made any misrepresentations whatsoever?

*A*. No.

Defendant contends that the documents provided to plaintiff's due diligence consultants included information disclosing the method of recording life insurance policies that were intended for sale to providers, and which defendant had the exclusive right to sell as life settlements, but were not yet sold. Defendant cites *Nieves v Bell Indus, Inc*, 204 Mich App 459, 464; 517 NW2d 235 (1994) for the principle that "[t]here can be no fraud where a person has the means to determine that a representation is not true." Plaintiff argues that *Nieves* is factually distinguishable. In *Nieves*, the plaintiff was orally informed during a job interview that the position was "long-term," and that the employer would not terminate employment "arbitrarily." The plaintiff was offered the position, and subsequently signed a written application that stated that employment was terminable at the will of the employer. The plaintiff was given an oral assurance that this provision did not apply to him. *Id*. at 460-461. The plaintiff accepted the employment, and was subsequently terminated. The plaintiff brought an action against the defendant employer for wrongful discharge and misrepresentation. *Id*. at 462. This Court held that the trial court should have dismissed the plaintiff's misrepresentation claim, stating, "A misrepresentation claim requires reasonable reliance on a false representation. . . . There can be no fraud where a person has the means to determine that a representation is not true." *Id*. at 464.

Plaintiff contends that *Nieves* is distinguishable because the plaintiff in that case should have known from the written agreements that the prior oral assurance of just-cause employment was false. Plaintiff contends that there was only "a mere possibility" that it could have discovered the falsity of the financial statements through its due diligence advisor. However, the attachments to the 2007 balance sheet arguably gave plaintiff's advisors information concerning the recording of accounts receivable. The attached Note states, "The Company records accounts receivable on a 5 stage basis, stage 1 through 3 being less collectable  Attached are the calculations for the various stages which includes [sic] an allowance for doubtful accounts." This attachment supports defendant's argument that there was no misrepresentation because plaintiff was provided with the relevant information. Accordingly, the evidence establishes a question of fact regarding whether plaintiff sustained an unjust injury or loss. *Rymal*, 262 Mich App at 293-294. If defendant provided the information, but plaintiff's advisors overlooked it or misunderstood it, then plaintiff's injury could be attributable to its advisors' actions. Plaintiff argues that defendant's fraud cannot be excused merely because plaintiff might have discovered

it, but this is not an accurate characterization if defendant actually provided the documents containing the necessary information.

Plaintiff argues that defendant failed to offer evidence that Invescor's procedure for recording unsold life insurance policies as accounts receivable or inventory is an accepted practice under GAAP. However, plaintiff failed to offer evidence that it is not. Plaintiff's evidence that defendant and Kessler exchanged e-mails about this practice, and that Kessler testified in his deposition that he did not develop the practice, does not negate the existence of a question of fact over the legitimacy of the practice. Kessler testified that he did not independently verify that this accounting practice is appropriate in the life settlement industry, and he referred to the method as "pretty unique," but he also stated that the method "made sense" to him. Plaintiff has not offered any other evidence that defendant's practice was inherently deceptive or unethical.

Plaintiff stated that defendant falsely represented that the funds loaned by plaintiff would be allocated toward expanding Invescor's business. Plaintiff cited e-mails exchanged between defendant and Adrian Anderson regarding plaintiff's demand for a personal guarantee. Plaintiff also cites defendant's Executive Summary stating that funds invested by plaintiff would be used toward expanding Invescor's business. But plaintiff does not offer any evidence that defendant made a commitment to using the funds *only* for expansion of Invescor's business.

In sum, the evidence established sufficient questions of fact regarding defendant's alleged use of Invescor as a mere instrumentality, and regarding whether plaintiff sustained an unjust loss attributable to defendant's alleged abuse of the corporate form. Accordingly, the trial court erred in granting plaintiff's motion for summary disposition.

## D. THE *GLENN* FACTORS

Defendant argues that this Court's decision in *Glenn* requires that the trial court conduct a fact-specific analysis, taking into account each of the factors stated in *Glenn*, 305 Mich App at 716. These factors are: "(1) whether the corporation is undercapitalized, (2) whether separate books are kept, (3) whether there are separate finances for the corporation, (4) whether the corporation is used for fraud or illegality, (5) whether corporate formalities have been followed, and (6) whether the corporation is a sham." *Id*. However, the Court in *Glenn* did not mandate consideration of each of these factors, but instead commented "[t]here is no single rule delineating when the corporate entity may be disregarded," because the "entire spectrum of relevant fact forms the background for such an inquiry . . . ." *Id*. This Court stated that these factors are "used by courts to determine the propriety of piercing the corporate veil," and that these factors are "include[d]" in the analysis. *Id*. Therefore, explicit consideration of each of these factors is not required.

## III. JURY TRIAL

Defendant argues that because he filed a jury demand with his answer to plaintiff's complaint, he is entitled to a jury trial on remand. We disagree.

A party's right to a jury trial depends on whether the constitution or a statute confers such a right. *Madugula v Taub*, 496 Mich 685, 696; 853 NW2d 75 (2014). Questions of

constitutional law are reviewed de novo. *Champion v Secretary of State*, 281 Mich App 307, 309; 761 NW2d 747 (2008). Issues concerning the interpretation and application of court rules are reviewed de novo. *Haliw v City of Sterling Hts*, 471 Mich 700, 704-705; 691 NW2d 753 (2005).

Preliminarily, we reject defendant's argument that he was entitled to an immediate trial under MCR 2.116(I)(3). That court rule provides:

> A court may, under proper circumstances, order immediate trial to resolve any disputed issue of fact, and judgment may be entered forthwith if the proofs show that a party is entitled to judgment on the facts as determined by the court. *An immediate trial may be ordered if the grounds asserted are based on subrules (C)(1) through (C)(6), or if the motion is based on subrule (C)(7)* and a jury trial as of right has not been demanded on or before the date set for hearing. If the motion is based on subrule (C)(7) and a jury trial has been demanded, the court may order immediate trial, but must afford the parties a jury trial as to issues raised by the motion as to which there is a right to trial by jury. [Emphasis added.]

Plaintiff's motion for summary disposition was brought under MCR 2.116(C)(10), and therefore, was not within the scope of the immediate trial provision under subrule (I)(3).

Regarding defendant's claim that he is entitled to a jury trial, Const 1963, art 1, § 14 provides that "[t]he right of trial by jury shall remain, but shall be waived in all civil cases unless demanded by one of the parties in the manner prescribed by law." "To determine whether a constitutional right to a jury trial attaches to a claim," this Court considers whether the nature of the claim would have been considered legal in nature at the time our Constitution was adopted. *Madugula*, 496 Mich at 705-706. If the nature of the controversy is equitable, "then it must be heard before a court of equity." *Id*. This determination depends upon both the nature of the underlying claim and "the relief that the claimant seeks." *Id*. at 706. Piercing of the corporate veil is an equitable remedy. *Foodland Distrib*, 220 Mich App at 456.

Defendant acknowledges that a claim to pierce the corporate veil sounds in equity, and therefore, he is not entitled to a jury trial on that claim. He argues, however, that he is entitled to a jury trial with regard to plaintiff's claim for breach of contract. "[I]n cases involving both equitable and legal issues, juries may decide factual issues relating to a claim for money damages, while judges retain the authority to determine the facts as they relate to equitable remedies such as specific performance or injunction." *ECCO Ltd v Balimoy Mfg Co*, 179 Mich App 748, 751; 446 NW2d 546 (1989). Plaintiff argues that it has not alleged a breach of contract claim separate from the veil-piercing claim, because the only breach is Invescor's breach of its loan agreements with plaintiff, and plaintiff already obtained a default judgment against Invescor for that breach of contract. Consequently, there is no separate jury-triable claim. We agree with plaintiff.

In *Gallagher v Persha*, ___ Mich App ___; ___ NW2d ___ (2016) (Docket Nos. 327840 and 325471), the plaintiff sued a corporate defendant, Kaper, and an individual defendant, Kathleen Persha, for breach of fiduciary duty and fraud with regard to a failed mortgage

transaction.  *Id*. at \_\_\_; slip op at 2.  The plaintiff obtained a judgment against Kaper pursuant to case evaluation, but Persha rejected the case evaluation.  The parties stipulated to dismiss the plaintiff's remaining claims against Persha without prejudice.  *Id*. at \_\_\_; slip op at 2.  The plaintiff then brought a three-count complaint against Persha, raising claims of fraud, breach of fiduciary duty, and piercing the corporate veil.  The trial court dismissed the first two claims, respectively on grounds of prior dismissal and the plaintiff's failure to plead a valid claim for relief against the defendant.  The trial court then dismissed the veil-piercing claim on the ground that it was no longer supported by an underlying cause of action.  *Id*. at \_\_\_; slip op at 2-3.  On appeal, this Court held that where a plaintiff has already obtained a judgment against a corporate defendant on a cause of action, and subsequently seeks to enforce that judgment against an individual defendant on a theory of piercing the corporate veil, the cause of action is merged into the judgment that the plaintiff seeks to enforce, and there is no need to obtain a second judgment against the individual defendant on the underlying claim.  *Id*. at \_\_\_; slip op at 8.  This Court stated:

> A corporate veil is pierced and liability imposed upon an individual shareholder or officer not because the shareholder or officer was necessarily liable under the cause of action resulting in the judgment against the corporation. . . .  Instead, liability is imposed because the fact finder has concluded that the individual so misused the corporation that it was unable to pay on the outstanding judgment and an injustice would occur if it the corporate form was not ignored.  [*Id*. at \_\_\_; slip op at 9.]

This Court further concluded that, "when a judgment already exists against a corporate entity, an additional cause of action is not needed to impose liability against a shareholder or officer if a court finds the necessary facts to pierce the corporate veil."  *Id*. at \_\_\_; slip op at 10.  These principles apply to this case, given that plaintiff has already obtained a default judgment against Invescor, and now seeks to impose liability on defendant through a claim of piercing the corporate veil.  Accordingly, plaintiff's claim for breach of contract was merged into the judgment that plaintiff now attempts to enforce against defendant.

Reversed and remanded for further proceedings.  We do not retain jurisdiction.

/s/ Cynthia Diane Stephens
/s/ Deborah A. Servitto
/s/ Douglas B. Shapiro

-13-